[Crim. No. 1172. First Appellate District, Division Two.—June 7, 1924.]

THE PEOPLE, Respondent, v. PETER PERRIN, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—VARI-ANCE—APPEAL.—On appeal from a judgment of conviction of the crime of obtaining money by false pretenses, the appellate court cannot consider the contention that the evidence shows that the offense committed by appellant was grand larceny, and not the offense pleaded in the information, where there is nothing in the record showing that such objection was made in the trial court and ruled upon adversely to the contention of appellant.

[2] ID.—FALSITY OF REPRESENTATIONS—EVIDENCE—INFERENCES.—In a prosecution on a charge of obtaining money by false pretenses, it is not necessary that the prosecution rely on direct evidence to prove that the representations were false; and, the making of the representations as charged in the information not being contro-verted, it is competent for the jury in determining the truth or falsity of such representations to take into consideration all the circumstances, including the acts of defendant at the time of and following the commission of the offense as charged in the informa-tion.

[3] ID.—RELIANCE UPON REPRESENTATIONS—EVIDENCE.—In a prosecu-tion on a charge of obtaining money by false pretenses, it is unnecessary for the prosecuting witness to testify in direct terms that he parted with his money relying on the representations of defendant, it being sufficient if the jury can draw that inference from the evidence introduced in the case.

1.  See 8 Cal. Jur. 498; 2 R. C. L. 82.

2.  See 12 Cal. Jur. 474.

3.  Reliance on false pretense as an element of the offense of ob-taining property by false pretense, note, 6 L. R. A. (N. S.) 365. See, also, 12 Cal. Jur. 473; 11 R. C. L. 836.

[4] ID.—FALSE TOKEN AND WRITING—EVIDENCE.—In this prosecution on a charge of obtaining money by false pretenses, the money of the prosecuting witness having been obtained through the medium of the so-called "can-game," the box in which the prosecuting witness had placed his money and the contents thereof when the box was subsequently opened were sufficient to constitute a false token and the entries in the register of the hotel at which a room had been rented were a sufficient showing to constitute a false writing within the purview of section 1110 of the Penal Code.

[5] ID.—ALIBI—EVIDENCE—INSTRUCTIONS.—In such prosecution, it was not prejudicial error to refuse certain instructions requested by defendant regarding the evidence which he produced in his attempt to prove that he did not commit the offense on the date charged, because on that date he was at a specified place outside the state, where the court did instruct the jury that if they believed from the evidence beyond a reasonable doubt that, at the place charged in the information, at or about the time mentioned therein, defendant knowingly and designedly committed the acts charged in the information, and further instructed them that the prosecution must prove the allegations of the information beyond a reasonable doubt.

(1) 17 C. J., p. 50, sec. 3328.   (2) 25 C. J., p. 652, sec. 89.   (3) 25 C. J., p. 652, sec. 91, p. 653, sec. 91.   (4) 25 C. J., p. 651, sec. 89. (5) 16 C. J., p. 977, sec. 2375, p. 1063, sec. 2506.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Saunders & White for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant was charged by information with the commission of a felony, he entered a plea of not guilty and was tried before the court sitting with a jury; the jury returned a verdict finding him guilty as charged in the information; he made a motion for a new trial and in the motion stated all of the statutory grounds; his motion was denied, and he has appealed from the judg-

4. What is a "confidence game," notes, Ann. Cas. 1912A, 758; Ann. Cas. 1916A, 734. See, also, 12 Cal. Jur. 474; 11 R. C. L. 839. 5. See 8 Cal. Jur. 336, 623; 8 R. C. L. 220.

ment of the trial court and its order denying him a new trial.

For many years prior to raisin day, April 26, 1923, Clement A. Larre had resided near Fresno. While residing in that neighborhood he had accumulated sufficient funds to own the small property on which he resided and to have four thousand dollars on deposit in the Bank of Italy.

Some of the facts contained in the record are as follows: Prior to the date mentioned Peter Perrin, the defendant, had been working as waiter, bartender and cafe attendant in and about Tijuana. At that place he had heard at least one sure-thing man describe the so-called "can-game." Recognizing the possibilities, he determined to make an attempt to work the game on some person whom he might locate. Accordingly, he went to Fresno and was there on raisin day. While standing on the street he observed Larre and approached and entered into a conversation with him. Finding that Larre was a Basque, he expressed his pleasure and continued to converse with him for two hours or more. In that conversation he inquired where Larre lived and also as to whether Larre had any money. The prosecuting witness frankly stated that he had about four thousand dollars in the bank. The second day after raisin day Perrin called at the home of Larre where he met both Larre and Larre's wife, and visited with them two hours. The next day after that he called again and met the same persons and also their son. On one of these visits he took with him a bottle of wine, and that he worked swiftly in ingratiating himself in the confidence of Larre is evidenced by the fact that on one occasion he made the statement "I love you like my father." On the visit last mentioned he made arrangements to meet Larre at the Free Market in town the next day. Pursuant to that appointment they met and shortly thereafter Perrin introduced Larre to another man who is referred to in the record as John Doe. Their new acquaintance asked them if they spoke French and expressed his delight in meeting gentlemen who spoke French. He also stated to them that he had been three days on the train and that he was stopping at the Palace Hotel. He said his father had been an architect in Fresno for a number of years and had become a very rich man, and that an automobile ran over and killed him. Before dying the father told the speaker that fifty thousand

dollars of his estate should be delivered to a priest in Fresno. Thereupon Perrin interrupted John Doe by saying, "What is the use in giving fifty thousand dollars to the priest, why don't you give it to us? We are two Frenchmen and we need the money." John Doe replied that there were lots of tramps around Fresno and he did not care to give the money to tramps, but wanted to give it to someone who had money. He further stated that he had ten thousand dollars more in a valise at the Palace Hotel that he was going to divide. Thereupon they rented a room and registered in what is known as the Arlington Hotel, which consists of some rooms upstairs over "Army Goods Store." John Doe told Perrin to go down and get a box. Later Perrin came back with the box. At that time Larre had drawn his money out of the bank and had the four thousand dollars in his pocket. While in the room the defendant pretended to place that four thousand dollars in the box. About the same time John Doe exhibited a purse which was tied beneath his coat and in which he claimed there was lots of money, and shoved around his coat pretending that he was putting something in the box. Then the box was locked and the two strangers left the box there and told Larre that they were going to the Palace Hotel to get the ten thousand dollars. When the two strangers left for the Palace Hotel they cautioned Larre to guard carefully the box until they returned with the additional money. He did so guard it for five or ten minutes and then he commenced to suspect that something was wrong. He took the box to the Bank of Italy, the bank called a policeman, the box was broken open and there was inside of it a bandana handkerchief, the leather purse and five one-dollar bills.

[1] The appellant calls to our attention the fact that the information purported to charge the crime of obtaining money by false pretenses. (Pen. Code, sec. 532.) He then reviews the foregoing evidence and contends that the evidence shows that Larre had no intention of passing title to his four thousand dollars, and the offense, if any, was grand larceny and was not the offense pleaded in the information. In other words, the appellant claims that there was a material variance between the offense charged and the proof introduced. Be this as it may, we do not find anything in the record that presents the point to this court for consid-

eration. This is a court of review; its power extends to reviewing the rulings made by the trial court. We have read the record from cover to cover. In the trial court there was no objection made, and there was no motion made, which on its face purported to present the point to the trial court. Every presumption is in favor of the regularity of the proceedings in that court. He who would assert that the trial court committed an error must produce a record showing that the error was committed, not that one may have been committed. The utmost that can be said in favor of the appellant is that his application for a new trial covered, among other grounds, " . . . 4. That the court . . . erred in the decision of questions of law arising during the course of the trial. 5. That the verdict is contrary to the law and contrary to the evidence." However, the record does not show that in presenting his motion for a new trial the appellant presented the above point or asked the trial court to rule thereon. Under these circumstances we do not feel called upon to determine the merits of the question.

[2] On the trial of the case the prosecution did not introduce any evidence directly to the point that the representations were false. However, it was not necessary that the prosecution rely on direct evidence to prove the negative. It was entitled to rely on indirect evidence as proving the negative. That the representations were made as charged in the information is not controverted. It was competent for the jury in determining the truth or falsity of such representations to take into consideration all of the circumstances. In doing so, the acts of the defendant at the time of and following the commission of the offense as charged in the information certainly constituted some proof of the falsity of the representations. (*People* v. *Ward,* 5 Cal. App. 36 [89 Pac. 874].)

[3] It was likewise unnecessary for the prosecuting witness to testify in direct terms that he parted with his money relying on the representations of the defendant. It was sufficient if the jury could draw that inference from the evidence introduced in the case. (*People* v. *Hong Quin Moon,* 92 Cal. 41 [27 Pac. 1096].)

[4] The appellant further contends that the evidence introduced by the prosecution did not comply with the requirements of section 1110 of the Penal Code. " . . . the

defendant cannot be convicted if the false pretense was expressed in language unaccompanied by false token or writing. . . . '' We think there is no merit in the point. The box and the contents found therein when the box was opened at the bank are a sufficient showing to constitute a false token and the entries on the hotel register were a sufficient showing to constitute a false writing within the purview of the statute.

[5] The appellant requested the trial court to give certain instructions regarding the evidence which the appellant had introduced in his attempt to prove an alibi. The trial court did not give any one of those instructions and the appellant assigns its refusal as error. However, the trial court did instruct the jury as follows: ''The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that in the county of Fresno, at or about the time mentioned in the information, the defendant knowingly and designedly . . . ,'' etc. The trial court also carefully and fully instructed the jury to the effect that the prosecution must prove the allegations of the information beyond a reasonable doubt. The nature of the defense interposed was to the effect that the defendant did not commit the alleged offense on the date charged at Fresno, because on that date he was at Tijuana, Mexico. It is patent that if the jury found that he did commit the act on the date alleged at Fresno, that he was not on that date at Tijuana, and the converse is equally true. A similar question was presented to the court in the case of *People* v. *Buck*, 151 Cal. 667 [91 Pac. 529]. At page 673 of 151 Cal. [91 Pac. 531], Chief Justice Beatty said: ''No reason occurs to us why so mere a commonplace should not have been allowed to stand, but there seems as little reason why it should have been requested. It must be presumed that a jury always understand that it is their duty to give any evidence submitted to them the weight to which it seems entitled, and the refusal of the judge to make that comment on any particular item or line of evidence cannot be supposed to prejudice the party offering it.''

We find no prejudicial error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.