[Crim. No. 1235.    Second Appellate District, Division One.—December 30, 1925.]

## THE PEOPLE, Respondent, v. JAMES E. HOVERMALE, Appellant.

[1] CRIMINAL LAW — ROBBERY — IMPEACHMENT OF ALIBI WITNESS — SUFFICIENCY OF FOUNDATION.—In this prosecution for robbery, defendant's brother-in-law in his direct examination having testified that the defendant with his family was visiting with the witness at the latter's home at the time the crime was committed, the district attorney's question on cross-examination as to whether said witness did not state to a designated person on or about a given date that he (the witness) drove the machine at the time of the holdup was relevant and competent for impeachment purposes; and conceding that the question was objectionable, in that the element of place was not included, the error was not such as to justify a reversal, where the witness was not misled and he unequivocally denied having any such conversation.

[2] ID.—CROSS-EXAMINATION OF ALIBI WITNESS—FOUNDATION FOR IMPEACHMENT.—In such prosecution, the trial court did not commit prejudicial error in overruling defendant's objection to the further question, asked said witness on cross-examination, if he did not also tell said designated person "in the same conversation, at the same time, all of the details of the . . . holdup," on the ground that said question called for the opinion and conclusion of the witness, where said question was one of a series of questions that were propounded on cross-examination, relating to the time, place, and incidents of the alleged holdup, for impeachment purposes, and the witness consistently and positively denied any knowledge of the holdup, or of having made any statements concerning the same or any purported details of it to said designated person, or that defendant had been involved in it.

[3] ID.—IMPEACHMENT TESTIMONY—LIMITED CONSIDERATION—INSTRUCTIONS.—In such prosecution defendant's brother-in-law having denied *in toto* the alleged conversations with said designated person, the testimony of the latter was properly admitted for the purpose of impeaching the testimony of the former, where the trial court in overruling defendant's objection and admitting the testimony clearly stated that it was admitted solely for the purpose of impeachment; and where defendant did not request the court to instruct the jury that said testimony could only be considered by them for the purposes of impeachment of the testimony of de-

1.  See 27 **Cal. Jur.** 163.
3.  See 27 **Cal. Jur.** 165, 169.

fendant's brother-in-law, defendant cannot on appeal complain of any injury that he may consider he suffered by reason of a possible inference that the jury may have misused said impeachment testimony.

[4] ID.—ALIBI—REASONABLE DOUBT—INSTRUCTIONS.—In such prosecution, the trial court did not commit prejudicial error in refusing to give defendant's requested instruction on the subject of his defense of an alibi and right to acquittal in the event of a reasonable doubt as to his presence at the scene of the crime at the time it was committed, where in another instruction the court sufficiently covered all that was necessary on the mere question of alibi, omitting the question of reasonable doubt, and in other general instructions the jury were advised that if they were not convinced beyond a reasonable doubt of the guilt of defendant they should render a verdict of acquittal.

[5] ID.—ORAL ADMISSIONS — WEIGHT — REASONABLE DOUBT — INSTRUCTIONS.—In such prosecution, the court did not commit prejudicial error in refusing to instruct the jury "that under the laws of this state, evidence of the oral admissions of a party to an action ought to be viewed by the jury with caution, and if you should believe beyond a reasonable doubt that the defendant . . . had made any admissions to witnesses testifying in this case, you will so consider such testimony."

[6] ID. — PRESUMPTION OF INNOCENCE — INSTRUCTIONS. — In such prosecution, there having been no limitation in the instruction given by the court on the subject of presumption of innocence, the court did not err in refusing defendant's requested instruction that the presumption of innocence with which the defendant is clothed throughout the trial of the case goes with him in the jury's retirement to consider their verdict, and they must examine the evidence in the light of that presumption.

[7] ID.—ARGUMENT TO JURY—MISCONDUCT OF DISTRICT ATTORNEY.—In such prosecution, there was no merit in defendant's contention on appeal that the district attorney, in his argument to the jury, made certain statements which were prejudicial to defendant's rights.

---

(1) 17 C. J., p. 315, n. 77, p. 368, n. 5; 40 Cyc., p. 2701, n. 39, p. 2714, n. 93, p. 2729, n. 62. (2) 16 C. J., p. 747, n. 47; 17 C. J., p. 311, n. 24; 40 Cyc., p. 2701, n. 39. (3) 16 C. J., p. 855, n. 20, p. 1059, n. 38. (4) 16 C. J., p. 1053, n. 93. (5) 16 C. J., p. 1004, n. 35. (6) 16 C. J., p. 984, n. 41, p. 1063, n. 85. (7) 16 C. J., p. 298, n. 21.

4. See 8 Cal. Jur. 314; 14 R. C. L. 752.
5. See 8 Cal. Jur. 305.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Homer C. Mills for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HAHN, J., *pro tem.*—James Hovermale and Roy Smith were charged jointly with the crime of robbery by an indictment returned by the grand jury of Los Angeles County. The prosecution proceeded with the trial against Hovermale in the absence of Smith, who at that time had not been apprehended. From the judgment of the court upon a verdict of guilty, and the order denying his motion for a new trial, defendant Hovermale prosecutes this appeal.

From the record it appears that on the evening of November 7, 1923, between the hours of 7:40 and 8:00, a Pasadena Short Line car of the Pacific Electric Railway Company was boarded by three men at Valley Junction, a stopping point in a sparsely settled section of Los Angeles City. Immediately upon the car getting under way one of the trio passed rapidly through the car to the front platform, the other two remaining on the rear platform. A few minutes after the car had started, and while the conductor was occupied in collecting fares, a report was heard similar to that of an exploding track torpedo. The conductor immediately turned to go to the rear platform but was confronted by one of the two men, who had boarded the car at the last stop, with a revolver and a command, "Hands up!" About the same time the man who had passed to the front of the car was seen pointing a revolver at the motorman. The third one of the trio proceeded immediately through the car relieving passengers of their money and jewelry. When the bandits began their operations it was first noticed that all three of them had dark-colored handkerchiefs tied across their faces, covering the nose and lower portion of the face. The bandit who covered the conductor seemed to be the one who directed operations, as he gave

commands to the conductor and passengers, as well as directed the work of the one who was relieving the passengers. He was described as a young man weighing about 150 pounds, standing five feet six inches to five feet seven inches in height. As it was the theory of the prosecution that this one of the trio was in fact the defendant Hovermale, we will not give space to a detailed description of the other two bandits. After the passengers had been relieved of their valuables, the operation occupying ten or fifteen minutes, the motorman was ordered to slow down his car and thereupon all three bandits left the car and disappeared in the darkness.

The defense offered by the defendant was that of an alibi.

Appellant does not urge, as a ground of appeal, the insufficiency of the evidence to support the verdict. His contentions for a reversal of the judgment are based upon: First, alleged errors committed by the court during the trial in the admission of certain testimony; second, errors committed by the court in giving certain instructions and in refusing instructions requested by the defendant; and, third, misconduct on the part of the district attorney during his argument to the jury.

[1] Considering the points in the order named, our attention is directed to certain questions propounded by the district attorney in the cross-examination of one C. R. Godfrey, a witness produced on behalf of the defendant, and whose testimony was given by deposition. The questions objected to, as well as practically all of the questions propounded to the witness in cross-examination, were for the purpose of impeachment. The first one of the questions objected to, as well as the answer, is as follows: "Q. Do you know one H. W. Fifield? A. I do. Q. Did you not state to H. W. Fifield early in January or February, 1924, that you drove the machine at the time of the Pacific Electric holdup on November 7, 1923? A. No."

To the latter question the defendant objected on the ground that "it was incompetent, irrelevant and immaterial, hearsay and if intended for impeachment purposes no proper foundation has been laid, and it is intended to impeach on an immaterial matter." The court overruled this objection and the defendant now assigns that ruling as error. The witness in his direct examination testified that the defendant

Hovermale was his brother-in-law and that on November 7, 1923, between the hours of 6 and 11 o'clock P. M., during which time the alleged robbery took place, the defendant with his family was visiting with the witness at the witness' home in Monrovia. The question objected to was for the purpose of impeachment and was both relevant and material. It is, however, urged that no proper foundation was laid for impeachment purposes. As to the elements of time and persons present we feel the objection is without merit. (*Plass* v. *Plass,* 122 Cal. 4 [54 Pac. 372].) As to the element of place the question was defective, and this leads to the inquiry as to whether or not the ruling of the court operated to the detriment of the defendant. The deposition of the witness Godfrey contained a number of questions propounded by the district attorney in cross-examination, relating to this alleged conversation between the witness and one H. W. Fifield. These questions were manifestly for the purpose of impeachment. Some of the questions asked and answers given were allowed to be read to the jury, and the objections to others were sustained by the court. All of the questions asked of the witness by the district attorney relating to an alleged conversation with Fifield were answered by the witness by a denial that he ever had any such conversation in which he either related any of the details or circumstances of the robbery or that he himself participated in it. We cannot conceive how the witness could have been misled in any way in answering the question under consideration by the fact that the particular place where the conversation was claimed to have taken place was omitted from the question. His answers were so unequivocally in the negative as to any such conversation, and the subject matter was of such an unusual and serious character, that it is inconceivable that the witness either would have forgotten such a conversation if he had had it, or that, under the circumstances, he would have given any other answer than the one given even though a place was fixed in the question. The witness was defendant's brother-in-law. His testimony on direct examination was the strongest presented on the part of the defense in support of the defendant's alibi. The witness had positively and definitely stated that the defendant was visiting with him at his home at the time of the robbery. To have admitted, after giving such testimony,

whatever the form of the question, that he had told Mr. Fifield anything that would have in fact positively rendered ineffective his direct testimony, seems quite beyond the bounds of reason. Considerable latitude has been recognized by the authorities in this state in the framing of questions of this character. (*People* v. *Bosquet,* 116 Cal. 75 [47 Pac. 879] ; *Plass* v. *Plass,* 122 Cal. 5 [54 Pac. 372].) Furthermore, section 4½ of article VI has a direct bearing upon the point under consideration, and when so viewed, we have no hesitancy in concluding that the error complained of was not such as to justify a reversal.

[2] The defendant next urges that his objection to the following question: ''Did you not also tell H. W. Fifield in the same conversation, at the same time, all of the details of the Pacific Electric holdup? And also say to him that James Hovermale held a gun on a motorman?'' should have been sustained.

The defendant urges that the question calls for the opinion and conclusion of the witness and the overruling of his objection to the question was prejudicial error. While the first question does call for a conclusion of the witness, it was one of a series of questions that had been propounded on cross-examination and relating to the time, place, and incidents of the alleged holdup. As previously stated, these questions were all propounded, in cross-examination, for the purpose of laying the foundation for impeaching the witness. To each and all of the questions so propounded to the witness on cross-examination he gave negative answers. He consistently and positively denied any knowledge of the holdup, or of having made any statements concerning the same or any purported details of it to Fifield, or that the defendant Hovermale had been involved in it. Appellant cites, in support of his contention on this point, the case of *People* v. *Nonella,* 99 Cal. 333 [33 Pac. 1097]. An examination of this case clearly shows that it is not in point. There the court held, and this is very apparent from reading the opinion, that the questions asked of the wife of the defendant which served as a basis for the impeaching testimony offered later, differed very markedly from the questions that were asked of the impeaching witness and which constituted the error. Likewise, the case of *People* v. *Morotti,* 61 Cal. App. 689 [215 Pac. 719], cited by the ap-

pellant, is not in point. There the attempt to impeach the complaining witness was by the introduction of a written statement signed by the aunt of the complaining witness and a county probation officer, which statement purported to give the conclusion of the signers of what the complaining witness had told the signers some days previous to the trial. Without extending the review to other authorities which we have examined bearing upon this point, we are of the opinion that the ruling of the court, upon the objection that the question asked for the conclusion of the witness, was not a prejudicial error, and as to the other portion of the question the ruling was not in error.

[3] It is next urged by the defendant that the admission of the testimony of one H. W. Fifield, which purported to give an entire conversation with C. R. Godfrey, was highly prejudicial to the defendant. This testimony was offered by the district attorney for the purpose of impeaching the testimony of the witness Godfrey who had testified in direct examination on behalf of the defendant, that the defendant, his brother-in-law, with his family, were visiting at Godfrey's home at the time of the robbery. The court, in overruling the defendant's objection and admitting the testimony, clearly stated that it was admitted solely for the purpose of impeachment. But appellant urges that the jury might, and in effect did, consider this testimony as bearing directly on the question of defendant's presence at, and participation in the robbery. It may be admitted that jurors untrained in legal matters may not grasp the points of differentiation in the rules of evidence, and, further, jurors may intentionally or ignorantly permit evidence to influence them in the consideration of the defendant's guilt in a manner contrary to the instructions of the court. But this inference, for manifestly it is nothing more than an inference, does not destroy the right to have evidence introduced for a limited purpose. This, indeed, is quite common in both civil and criminal actions, and when the case is being tried before a jury, the possibility that the jurors may make improper use of the evidence is usually met, by the party likely to be affected, with a requested instruction from the court directing the jury to consider the admitted evidence only for the purpose for which it was admitted. We have carefully examined the record in this case and do not find any request made

76 Cal. App.—7

by the defendant of the court to instruct the jury that the testimony of Fifield could only be considered by them for the purposes of impeachment of the testimony of one Godfrey. Manifestly, where no such instruction was requested, the defendant cannot at this time complain of any injury that he may consider that he has suffered by reason of a possible inference that the jury may have misused the evidence introduced.

[4] The next group of errors has to do with instructions requested by the defendant and refused by the court. The first instruction referred to reads as follows:

"The court instructs the jury that the defendant has introduced evidence in this case in support of his defense of an alibi; an alibi means that the defendant was elsewhere than at the place where the crime charged was committed at the time of its commission, and that therefore he could not have committed it. The rule is that, if the testimony addressed to the alibi is sufficient to raise a reasonable doubt of the defendant, James E. Hovermale's, presence at the scene of the crime at the time it was committed, then a reasonable doubt of his guilt arises, and he is entitled to an acquittal."

This instruction was refused by the court on the ground that it was "substantially covered." The instruction given reads as follows:

"It is the contention of the prosecution that the defendant committed the crime charged in the City of Los Angeles. The defendant, on the other hand, has introduced evidence for the purpose of showing that he was in the city of Monrovia at the time when it is charged that the crime was committed.

"The defendant could not have been in these two places at the same time; and in this contradiction of witnesses the jury has to determine for themselves where lies the truth. In so judging, they will take into consideration the appearance and apparent candor and fairness of the respective witnesses; the probability or improbability of their statements; its coincidence or failure to coincide with other facts or features of the case which they may deem established; and generally those rules of ordinary experience and general observation by which intelligent men decide as to controverted propositions of fact."

The instruction given sufficiently covers all that was necessary on the mere question of alibi; but it does not advise the jury that if the evidence tending to establish the alibi was sufficient to create a reasonable doubt that the jury should acquit. However, it does appear from the general instructions in several places that the court instructed the jury that if they were not convinced beyond a reasonable doubt of the guilt of the defendant they should render a verdict of acquittal. Manifestly, if the jury believed that the defendant was in Monrovia at his brother-in-law's house on the evening of November 7th, or if they had any reasonable doubt upon the question of his being there, they could not possibly have concluded beyond a reasonable doubt that he was one of the trio who perpetrated the robbery.

Appellant has cited the case of *People* v. *Visconti,* 31 Cal. App. 169 [160 Pac. 410, 411], as supporting his contention that the failure to give the requested instruction was prejudicial error. There a similar instruction was offered and refused, but it appears that no instruction whatever was given by the court on the subject of alibi. In the instant case there was an instruction given upon that subject, but not with the full detail as contained in the refused instruction. It is significant, however, that the supreme court, in denying a rehearing in the case of *People* v. *Visconti, supra,* makes this statement: "In denying the application we deem it proper to say that we are not to be understood as intimating that the refusal to give such an instruction as was refused in this case would in all cases be deemed by us sufficient for reversal. Especially is this true in view of the provisions of section 4½ of article VI of the constitution. In denying the application for hearing in this court we assume that the district court of appeal concluded, in view of the circumstances of this particular case as shown by the record, that the refusal of the trial court to permit the requested instruction operated substantially to the prejudice of the defendant."

[5] Appellant complains of the refusal of the court to give the following instruction:

"The court instructs the jury that under the laws of this state, evidence of the oral admissions of a party to an action ought to be viewed by the jury with caution, and if you should believe beyond a reasonable doubt that the defendant,

James E. Hovermale, has made any admissions to witnesses testifying in this case, you will so consider such testimony.''

Appellant concedes that the refusal of such an instruction has been held not to be prejudicial error. It was so held in *People* v. *Ruiz,* 144 Cal. 251 [77 Pac. 907]; *People* v. *Wardrip,* 141 Cal. 229 [74 Pac. 744]. It may be suggested further that subdivision 4 of section 2061 of the Code of Civil Procedure, under which the instruction was drawn, has been declared unconstitutional. (*Hirshfeld* v. *Dana,* 193 Cal. 156 [223 Pac. 451].)

[6] Appellant urges that the court committed prejudicial error in refusing the following instruction:

''The court instructs the jury that the presumption of innocence with which the defendant, James E. Hovermale is clothed throughout the trial of this case, goes with you in your retirement to consider your verdict, and you must examine the evidence in this case in the light of that presumption.''

The case of *People* v. *McNamara,* 94 Cal. 509 [29 Pac. 953], is cited as supporting appellant's contention. In that case the following instruction was held erroneous: ''This defendant, like all persons accused of crime, is presumed to be innocent until his guilt is established to a moral certainty and beyond all reasonable doubt, and this presumption of innocence goes with him all through the case, *until it is submitted to you.*'' The case was reversed because the court attached to the instruction the last six words which are in italics. In the instant case there was no limitation in the instruction given by the court on the subject of presumption of innocence, and this general instruction as given by the court has been held by our supreme court to be sufficient. (*People* v. *Jailles,* 146 Cal. 301 [79 Pac. 965]; *People* v. *Patino,* 9 Cal. App. 192 [98 Pac. 199].) Criticism is made of the refusal of the court to give a specific instruction as to the weight to be given to the testimony offered on behalf of the defendant through depositions. The subject, we feel, is fully covered by the general instructions given by the court concerning the weighing of evidence.

[7] The third point urged by appellant, as a ground for reversal, has to do with certain statements made by the district attorney in his argument to the jury and which statements are assigned as prejudicial error. We have carefully

examined the criticised remarks but find no merit in appellant's contention that they were prejudicial to his rights.

Judgment and order denying defendant's motion for a new trial are affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 28, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1926.