[Crim. No. 1632. Second Appellate District, Division Two.—
August 15, 1928.]

THE PEOPLE, Respondent, v. MIKE GARVEY et al.,
Appellants.

W. T. Kendrick, Jr., and W. T. Kendrick for Appellants.

U. S. Webb, Attorney-General, James S. Howie and John D. Richer, Deputy Attorneys-General, for Respondent.

THOMPSON (IRA F.), J.—The defendants were indicted by the grand jury of Los Angeles County charged in count I with the crime of murder and in count II with burglary. They were all found guilty of both offenses and prosecute this appeal from the judgments pronounced upon the verdict and also from the order denying their motion for a new trial.

The principal contention advanced by appellants is that the evidence is insufficient to sustain the verdict of guilty and their argument in this regard is pointed particularly to the verdict on the first count, for which the defendants were sentenced to San Quentin for life. The testimony adduced shows that A. R. Miles, the proprietor of a drug-store at the corner of Fourth Avenue and Jefferson

Street in the city of Los Angeles, was found dead in the rear room of that store on the evening of November 1, 1927, at about 10:30 P. M. The autopsy surgeon found an extensive contusion behind the left ear and underneath this contusion an extensive internal hemorrhage covering the entire surface of the brain and extending downward into the spinal canal. He could not say whether this injury was caused by a blunt instrument striking the head or by a fall. He also found an abrasion on the right side of the forehead and a contusion in the center of the left side of the forehead. The record discloses that during the course of the trial it was made to appear that A. H. Miles, the father of the deceased, was ill in bed and when it was suggested that the court attend his bedside for the purpose of taking his testimony, defense counsel, who is not now representing appellants, stipulated in open court, after being warned by the district attorney and after the latter had stated to counsel and the trial judge in chambers what his statement would be, that the district attorney might state what the witness would testify to if sworn and examined, and that he would not controvert the testimony, whereupon the district attorney stated that if Mr. Miles were called he would testify that he was the father of deceased; that he went to his son's store on the evening in question and not finding him in the front portion thereof, went into the room in the rear, where he found his son lying on the floor covered with blood and bound with wire, hand and foot; that there were abrasions on his head; that he examined the cash register and although the tape which records the amount of money rung up indicated $36, there was no money therein; that he then accompanied his son to the receiving hospital, where he died somewhere between 10 and 11 o'clock.

An eleven year old boy living in the neighborhood visited the store about 10 P. M. after returning from a picture show and while standing outside near the entrance, saw three men drive up in a Hudson coach automobile which they parked on Fourth Avenue, without stopping the motor. These three men went inside, one of them stating that he wanted a cigar and "asked for them free." When Miles refused he walked back into the rear room and two of the men followed. After being there about five minutes the three men "walked out fast . . . hopped in their car,"

threw a bag or something into the rear seat and drove away. After visiting the central station the fourth time and seeing other prisoners, the witness picked out from a group of eight and identified two of the appellants. He did not identify the third at the time, but soon afterward. After the three men left the store the boy ran some distance away but came back when the ambulance arrived, at which time he saw Miles "lying there all tied up." This witness also testified that he saw Roberta Scriver come in a little after the appellants left and "yoohoo" and knock on the counter, to which no one responded.

Roberta Scriver, the young lady just mentioned, testified that she lived two blocks from the drug-store; that she left home at exactly 10:15 o'clock on the evening in question and drove with friends to the drug-store; that when she went to go in she saw three men in a Hudson coach and saw them drive away; that one of the men came out of the store "kind of on a trot," threw a bundle into the car, got into the car and they all drove away. She was not positive in her identification of this man, but thought that appellant Lesher looked something like him. She also testified that she waited around the store about three minutes and thought it was funny that nobody was there. Later she saw Miles lying on the floor and that just above his left eye there was a "kind of a red mark like there was blood spurting out of his head." She also testified that she saw a gun lying on the table in the back room.

A witness by the name of Walton testified that about November 7th or 8th all of the appellants and some other people were at his home drinking bootleg and wine; that the appellant Lesher became so badly intoxicated that he had to put him to bed; that about 2:30 in the morning as Lesher was coming out of his stupor he said, "Why did I kill him"; that later Lesher came into the outer room and Walton in the presence only of Lesher asked him what he meant by the remark, whereupon appellant Lesher said, "I might as well tell about it," I committed the Jefferson street job," and added that he hit the deceased over the head and after he had fallen he opened his eyes and said "Heinie"; that then "I knew he knew me, and I finished him with my feet." This witness admitted that he was so intoxicated that about all he was able to do was to get

around. The court admonished the jury at the time the witness related this admission of the appellant Lesher that the testimony was not applicable to the appellants Garvey and Rohan.

The appellants all took the stand and denied any knowledge of the crime and maintained that they were at home on the evening in question.

It is apparent from the testimony introduced that the jury were fully justified in returning a verdict of guilty. There is nothing incredible in the testimony of Eddie Yates, the boy who identified the appellants. This same witness testified that Miles was all tied up, which, if believed, would dispel the idea of an accident, as would also a similar remark contained in the district attorney's statement of what the father would testify to, to the effect that his son was bound with wire, hand and foot. It has so often been asserted and is so well understood that it is not the province of this court to weigh the evidence where there is a substantial conflict that we deliberately decline to cite authorities to that effect.

We will next consider the asserted error of the court in denying the motion of appellants for a new trial which they argue seriously and with apparent sincerity. In aid of that motion there was presented an affidavit signed by H. S. Walton, a witness at the trial, in which he says that on the evening of November 7th or 8th, at which time he testified that Lesher cried out as he was coming out of a drunken stupor, "I am sorry I killed him," that he, Walton, was so intoxicated that he was incapable of registering intelligent impressions, and so "he never was certain whether *that statement* was actually made to him by Harvey Lesher" and that "he honestly believes that he might have imagined that *such a statement* was made by Lesher." He further avers that he was threatened with arrest by police officers and, being fearful of such action by them, testified to the statement. Nowhere in the affidavit does Walton say that he did not have the conversation which he testified took place after Lesher had come into the outer room. The affidavit is skilfully drawn, but nevertheless lmited in effect to saying that he may have been mistaken when he testified to this one statement. On the other hand, there were submitted on behalf of the prosecution six affidavits of various

police officers to the general effect that Walton had repeatedly and freely stated that Lesher had made the statement and had held the conversation which has been detailed. The remaining affidavits of appellants, five in number, state in general that H. S. Walton, the witness, was at the home of the appellant Lesher on the night of November 1st, somewhere between 9:20 and 9:45 P. M., some of them stating that they talked to him at that place between 9:30 and 10 o'clock; that he went from there to the home of Mrs. Adelaide Logan, arriving there between 9:30 and 10 o'clock. None of these affidavits state, nor does any affidavit disclose that this fact was not known to the appellants at the time of trial nor that they did not know that the affiants would so testify if called. Furthermore, we fail to attach any great significance to the fact that Walton was present at Lesher's home at the time indicated. If intended to be in aid of the proof of an alibi they would not only be merely cumulative, but also it may be observed that the offense was committed as near as may be fixed, at 10:15 P. M. (the time when Roberta Scriver left her home) and at a distance, as counsel state in their brief, of about three miles from the home of Lesher. The denial of a motion for a new trial, made on the ground of insufficiency of the evidence supported by affidavits of the character we have just classified, rests largely in the discretion of the trial court, and the ruling will not be disturbed unless it can be shown that there was an abuse of that discretion. We are of the opinion that there was nothing in the affidavits to warrant the granting of the motion in this case.

Appellants also complain because, during the trial of the action, testimony by one Stopp was permitted to the effect that some time between midnight of October 28, 1927, and 10 P. M. of October 29, his light green Hudson sedan was stolen from a garage on Mariposa Avenue. The night man at this garage also testified that about 9 o'clock in the evening of the day the Hudson was stolen he saw the appellant Lesher come out on the side of the garage between some signboards, get into a roadster and drive away with two other men whose faces he did not see. It is obvious that had the prosecution been able to prove that Lesher and his companions stole the Hudson sedan, it would have been material as tending to connect them with the commission

of the offenses with which they were charged, in view of the testimony that it was a Hudson automobile in which the criminals came and departed the scene of the crime. It is also apparent that the prosecution failed in their effort to make this proof, but because they did fail we cannot see that the testimony was of any effect one way or the other.

■ Appellants strenuously object to the stipulation already mentioned which the court permitted counsel who was representing the defendants at the trial to make, which permitted the district attorney to state what Mr. Miles would testify to if present, with the understanding that it would not be disputed. Counsel was fully advised of what that testimony would be and presumably the defendants, who were present, were likewise fully aware of its import. At least there is no showing that they were not aware of what it would be, nor is there any showing that they were prejudiced by the statement, or that anything contained in the statement was untrue. It is merely insisted that counsel had no right to enter into the stipulation. ■ The general rule is that counsel have the right to stipulate relative to any of the steps of an action or proceeding. (23 Cal. Jur., p. 814.) In fact, the situation here, when we bear in mind that counsel probably had in mind the effect which might possibly have been exerted upon the jury by an invalid father, is not unlike the one presented in the case of *People* v. *Schoon*, 177 Cal. 678, 684 [171 Pac. 680]. Akin to this reasoning is that found in the case of *People* v. *Bird*, 132 Cal. 261 [64 Pac. 259], where the court, after discussing the right of the defendant to be confronted with the witnesses, discloses that the defendant "may waive the right of confrontation, if he so desires, and introduce in evidence the testimony of such dead or absent witness, whether that testimony was given at the preliminary examination or upon a former trial of the cause." The action of the trial court in refusing the defendant permission to waive his rights in this case was held to be error and the cause was reversed.

■ Appellants also assert that the court erred in its refusal to give three instructions requested by them upon the subject of their attempted proof of an alibi. These instructions would have told the jury that if the testimony of the defendants in this regard was sufficient to raise a reasonable doubt in their minds concerning the presence of

appellants at the scene of the crime it was their duty to acquit. In view of the fact that the trial court extensively instructed the jury upon the subject of reasonable doubt and told them that it was not necessary for the defense to prove an alibi beyond a reasonable doubt, and also that if the evidence was equally susceptible to the interpretation that defendants were guilty, with the interpretation that they were not guilty, giving in all seven instructions bearing upon the question, we feel that appellants' argument is effectually concluded by the authorities *People* v. *Perrin*, 67 Cal. App. 612 [227 Pac. 924], and *People* v. *Powell*, 83 Cal. App. 62 [256 Pac. 561], wherein it is held not to be the duty of the trial judge to make any comment on any particular line of evidence.

Judgments and order affirmed.

Craig, Acting P. J., and Hazlett, J., *pro tem.*, concurred.