[Crim. No. 2413.  First Dist., Div. Two.  Feb. 27, 1947.]

THE PEOPLE, Respondent, v. DELBERT HOWARD MAYES, Appellant.

Alfred J. Hennessy for Appellant.

Robert W. Kenny and Fred N. Howser, Attorneys General, and W. R. Augustine, Deputy Attorney General, for Respondent.

NOURSE, P. J.—Defendant was found guilty of robbery of the first degree and appeals from the judgment of conviction entered upon this verdict and from an order denying his motion for a new trial. His cause was consolidated for the purpose of trial with the cause against one Arthur Neal, who by separate information was accused of participating in the same robbery with defendant Mayes. Arthur Neal was found not guilty in a separate verdict.

In the morning of May 23, 1945, a jewelry store at 419 Kearny Street in San Francisco was held up by two men, who threatened the owner, Sol Riskin, with fire arms, tied him up and twice untied him again to unlock the safe and an inner strong box for them. They took a considerable quantity of jewelry, including gold coins and a number of watches and also some money from the safe. After having been in the shop for three quarters of an hour, unmasked and undisguised, they left with the jewelry and money in a suit case they had found in the shop. At the trial defendants Mayes and Neal were positively identified by the complaining witness as the men he had seen for three quarters of an hour in his shop. They were also recognized by police officer Witry of the Chicago police, who was on duty with the United Nations Conference in San Francisco at the time of the robbery, as two men who had drawn his attention earlier on the morning of the crime when they were standing opposite the jewelry store. He testified that when on their passage through Chicago he told them so, they had each conceded that they had been there at the time. However, their ages and sizes did not coincide with those furnished by Riskin to the police after the robbery.

On July 5, 1945, Mayes was arrested in Dayton, Ohio, and at the time of his arrest was shot in the right arm. He had then on his person some gold coins subsequently identified by the complaining witness as taken during the robbery; among them was a peculiar, very thin gold coin which the complaining witness easily identified because of a certain plugged hole in it.

After his arrest, appellant was taken to a hospital where he stayed for four days after which he was removed to the county jail in Dayton. He testified at the trial that during all the

time he was in the hospital and the county jail he was interviewed by police officers and that he had asked for an attorney but that his request was denied and that nobody was permitted to see him. When Inspector O'Leary of the San Francisco police arrived he again asked for an attorney, but was told that he did not need one.

After long conversations with Inspector O'Leary, appellant promised that he would make a statement which he made on the next day, July 11, 1945. He repeated this statement to a stenographer in the presence of police officers and after it had been transcribed signed it. At the trial it was admitted in evidence without objection; Mayes testified that he was not abused in any way when the statement was taken and that the information was given freely and voluntarily.

In this statement he declared that a certain Tony Depilla, whom he knew in San Francisco, contacted him at Dayton, Ohio, in the first half of June and asked him to help dispose of a suit case full of jewelry Depilla had with him; that he helped him sell part of it to "fences" and that he, Mayes, himself bought some jewelry—among which the gold coins found on him—and some watches; that he had pawned seven of these watches in Cincinnati under false names. (This last statement he tried to retract at the trial.)

Mayes was then taken to Cincinnati, where the watches were redeemed. They were at the trial identified by the complaining witness as taken during the robbery; some of them could be identified by the case and movement numbers of which the complaining witness had kept book.

In the Cincinnati jail appellant had an opportunity to consult with his attorney. At the trial a confession was admitted in evidence purportedly signed by appellant in Cincinnati on July 17, 1945. The confession states in detail what happened during the robbery in Mr. Riskin's store, in complete agreement with Mr. Riskin's testimony in that respect, and how appellant disposed of the booty in Ohio. The evidence with respect to this confession is conflicting. Appellant testified that on July 17, when his attorney again visited him, the attorney told the police officers that Mayes was not fit to be questioned because he had been drugged that morning in connection with the treatment of his wounded arm; that nevertheless, after the attorney had left, he was taken to the office of Captain of Police, Pat Hayes, there accused by Inspector

O'Leary of being himself Tony Depilla, and when he denied having taken part in the robbery, handcuffed by the officers to a chair and beaten by Inspector O'Leary and Captain Hayes on body and face so that he bled badly. The purported confession was dictated by Inspector O'Leary, and did not correspond with actual questions and answers. No stenographer was present. A Federal Bureau of Investigation officer took the dictation of Inspector O'Leary on a typewriter. Appellant had not signed the typed paper. The witness Margaret Dixon from Dayton, Ohio, testified that when she visited Mayes in jail on July 16th or 17th, 1945, his face was all swollen around the mouth and nose, and his face and front of his shirt were bloody.

However, both Inspector O'Leary and the witness Courtland Jones, the FBI agent who took the statement down on a typewriter, testified that no force, violence or threats of any kind were used; that Mayes was not handcuffed to a chair nor beaten, that the questions were put and answered as stated and that appellant signed in their presence. They denied that appellant's attorney had warned them that Mayes was not fit to be questioned and the witness Courtland Jones moreover testified that Mayes in the office of Captain Pat Hayes requested that his attorney be summoned before he should make a statement and that no questions were asked before Mayes had conferred with his attorney alone.

At the trial the appellant testified also that he had lived in San Francisco for several months, had returned there from a visit to Dayton, Ohio, on May 20, 1945, and had gone back again to Dayton on May 25th. He had however not been in San Francisco in the morning of May 23. He had gone on May 22, to Reno where he had gambled the night through and had returned to San Francisco in the evening of the 23d. This alibi was in no way corroborated. The person with whom he allegedly had made the trip to Reno and whose car allegedly was used for it, was not called as a witness, although defendant's counsel stated with respect to him: "he was in court this morning."

Defendant Neal denied ever to have been in San Francisco. His sister, Mrs. Virginia Neal, testified that in May, 1945, defendant was living at her home in Dayton, Ohio, and was home every night, particularly on May 23d.

■ Appellant contends that the verdict against him is contrary to the evidence. There cannot be the least doubt

that the evidence stated amply supports the verdict; any conflict in it was resolved by the jury against appellant. Such finding is binding upon appeal where there is legal evidence to support it. *People* v. *Deysher*, 2 Cal.2d 141, 149 [40 P.2d 259]. Appellant, however, argues that both the defendants Mayes and Neal were identified by the complaining witness, that Neal was nevertheless found not guilty and that therefore there also must be a reasonable doubt as to the guilt of appellant. The following statement from *People* v. *Quinn*, 111 Cal.App. 614, 621 [295 P. 1042], is in point: "It should be remembered that the defendants were not charged jointly, but that each of them was separately charged with the commission of the offense, and that the 'defense' of 'alibi' of one defendant rested upon an entirely different state of facts and circumstances from that presented by his co-defendant. It was altogether possible that one of them was guilty of the offense of which he was charged and at the same time that his co-defendant was wholly innocent.''

As to Neal the evidence that he was in Ohio on the day of the crime and his denial ever to have been in California may have caused the jury to give him the benefit of a doubt which the jury need not have felt in the case of appellant. Appellant's contention that as the defendants were jointly charged with the commission of the same crime the basis must be conspiracy and the acquittal of one should result in the acquittal of the other is without merit. Defendants were not charged jointly but separately and not with conspiracy but with robbery.

Neither is there any merit in appellant's contention that the signature to the statement dated July 17, 1945, is not his signature, nor any basis for his desire to have expert evidence as to this handwriting presented to the appellate court. Whether the signature was his was a question of fact for the jury who heard the contradicting evidence and inspected the signature on the statement and other specimens of defendant's signature admitted in evidence. Appellant did not offer any expert evidence at the trial nor does he offer now anything in support of his contention that no handwriting expert was available at that time.

Appellant further contends that his confession, if he did sign it, was not a free and voluntary confession. "The rule is well settled that whether or not a confession is free

and voluntary is a preliminary question addressed to the trial court. (*People* v. *Loper,* 159 Cal. 6 [Ann.Cas. 1912B, 1933, 112 P. 720] ; *People* v. *Siemsen,* 153 Cal. 387 [95 P. 863] ; *People* v. *Grafft,* 61 Cal.App. 7 [214 P. 273] ; *People* v. *Middleton,* 65 Cal.App. 175 [223 P. 448].)   ▆ A reviewing court cannot say that the trial court committed error in admitting a confession of guilt unless such error appears as a matter of law from the record presented. The trial court is clothed with considerable discretion in determining whether or not the confession was free and voluntary. (See authorities last above cited.) Where the evidence is conflicting on the subject it must be assumed that the testimony concerning defendants' confessions was properly admitted. (*People* v. *Tugwell,* 28 Cal.App. 348 [152 P. 740].)'' *People* v. *Castello,* 194 Cal. 595, 599-600 [229 P. 855]. In this case the evidence with respect to the alleged physical maltreatment on July 17, 1945, in the Cincinnati jail is certainly conflicting and so far as this alleged physical maltreatment is involved it must be held that the confession was properly admitted. Appellant argues however that regardless of any physical maltreatment, the persistent questioning by police officers of a wounded man, kept incommunicado and denied counsel is sufficient to make a confession inadmissible, certainly when it is inconsistent with an earlier voluntary statement of that defendant. That such a confession would be inadmissible if it was given under the influence of such treatment and circumstances is not denied. *People* v. *Dye,* 119 Cal.App. 262 [6 P.2d 313] ; *People* v. *Quan Gim Gow,* 23 Cal.App. 507 [138 P. 918].

▆ However the evidence in this case does not show such influence. Appellant's evidence with respect to these circumstances relates only to his confinement in Dayton, at the end of which he made the statement of July 11th, 1945, which appellant himself represents as a voluntary, uninfluenced statement. There is no evidence of any abuse between the time of this first statement and the moment that Inspector O'Leary in Captain Hayes' office accused appellant of being himself the Tony Depilla mentioned in that statement. It cannot be said that abuse which may have occurred prior to July 11, 1945, but which did not influence the voluntary character of a statement of that date, must necessarily, as a matter of law, have destroyed the voluntary character of a confession given six days later without further abuse intervening. Appellant's testimony that during this period he succeeded

in having the assistance of his attorney, but not through the cooperation of the police officers, is insufficient to show further abuse vitiating the confession as a matter of law. The admission of the confession must be sustained. Moreover, the trial judge instructed the jury in substance that only a voluntary confession might be considered by them, and that they had the right to pass on the question whether the purported confession was freely and voluntarily made and to reject it if they did not believe it was so made. If the jury, following this instruction, might have rejected the confession there still would be sufficient legal evidence in the record to sustain the verdict.

Appellant contends further that the court erred in refusing to give a certain instruction on his defense of alibi proposed by appellant, and in giving in its place an instruction of its own, which did not contain the statement present in substance in the proposed instruction, that the jury should acquit the defendant if the evidence as to the alibi, considered with all the other evidence, raised a reasonable doubt of his presence at the time and place of the crime. That an instruction such as that omitted, correctly states the law and should be given was held in *People* v. *Fong Ah Sing*, 64 Cal. 253 [28 P. 233] (1883). The People concede that giving the instruction proposed by appellant would have been proper, but.deny that the failure to do so is reversible error in view of the instructions that were given with respect to alibi and the general instructions given repeatedly as to reasonable doubt.

The instruction as to alibi given by the court is practically identical with the one given in *People* v. *Hovermale*, 76 Cal. App. 91, 98 [243 P. 878], and in that case the identical questions were raised. The court affirmed the judgment of conviction, stating (p. 99) : ''The instruction given sufficiently covers all that was necessary on the mere question of alibi; but it does not advise the jury that if the evidence tending to establish the alibi was sufficient to create a reasonable doubt that the jury should acquit. However, it does appear from the general instructions in several places that the court instructed the jury that if they were not convinced beyond a reasonable doubt of the guilt of the defendant they should render a verdict of acquittal. Manifestly, if the jury believed that the defendant was in Monrovia at his brother-in-law's house on the evening of November 7th, or if they had any reasonable

doubt upon the question of his being there, they could not possibly have concluded beyond a reasonable doubt that he was one of the trio who perpetrated the robbery.'' The Hovermale case was followed in *People* v. *Brooks,* 79 Cal.App. 519 [250 P. 211] and its reasoning finds support in *People* v. *Foster,* 198 Cal. 112, 127-128 [243 P. 667]. In *People* v. *Powell,* 83 Cal.App. 62, 65-66 [256 P. 561] and *People* v. *Garvey,* 93 Cal.App. 497, 504 [169 P. 702]—both following the decision of this court in *People* v. *Perrin,* 67 Cal.App. 612, 617 [227 P. 924]—it was held that a specific instruction on reasonable doubt caused by evidence as to an alibi was unnecessary in view of other instructions given and that there was no reason for the trial court to call attention to any particular line of testimony.

However, another line of cases, deriving from *People* v. *Visconti,* 31 Cal.App. 169 [160 P. 410, 411], holds it reversible error not to give a requested specific instruction on reasonable doubt caused by evidence as to alibi notwithstanding the fact that general instructions on reasonable doubt were given. To this line of cases belong for instance: *People* v. *Garrett,* 93 Cal.App. 77 [268 P. 1071]; *People* v. *Vasquez,* 93 Cal.App. 448 [269 P. 549]; *People* v. *Quinn,* 111 Cal.App. 614 [295 P. 1042]. Most decisions with respect to the point in question are reviewed by the Supreme Court in the recent case of *People* v. *Kane,* 27 Cal.2d 693, 700-701 [166 P.2d 285], which case itself is concerned with the refusal to give a specific instruction not relating to alibi. Although none of the cases cited above is disapproved, the majority opinion is based on the Visconti case and reverses for the refusal to give more specific instructions as to reasonable doubt with respect to defendant's theory of defense, notwithstanding the fact that the general instructions had been given. Considering the present state of the authorities we would hesitate to hold that an instruction on alibi as given in this and in the Hovermale case together with general instructions on reasonable doubt would under all circumstances make a requested specific instruction on reasonable doubt caused by the evidence as to an alibi superfluous. But neither will the refusal to give such an instruction in all cases be deemed a sufficient cause for reversal. (Statement of the Supreme Court in denying a hearing of the Visconti case 31 Cal.App. 172.) Much may depend on the strength of the alibi evidence compared to the strength

of the evidence of guilt. (See Annotation 118 A.L.R. 1303, 1313.)

As in *People* v. *McCoy*, 127 Cal.App. 195, 198 [15 P.2d 543], we are of opinion that the error, if any, in refusing the proposed instruction and omitting to instruct on reasonable doubt caused by the evidence as to the alibi, does not require a reversal under the circumstances of this case. The jury was fully and fairly instructed on reasonable doubt and its attention was called to appellant's evidence regarding alibi by the fair though incomplete alibi instruction of the court. His alibi rested solely on his own completely uncorroborated testimony. The evidence connecting him with the robbery was overwhelming. The error, if any, has not resulted in a miscarriage of justice.

Finally, appellant contends that the trial court abused its discretion in denying his motion for a new trial, without granting him a continuance to prepare and file affidavits and without giving him an opportunity to state what his affidavits would contain or what the newly discovered evidence would prove. The record shows that appellant's attorney asked for a continuance of ten days to file his affidavits, as defendant's right under the law; that the court stated its understanding of the law to be that the court might pass upon the motion for a new trial immediately; that appellant's attorney reiterated his contention without any showing whatever in support of his application and without making any offer of a showing what his affidavits would contain or what the newly discovered evidence would prove; whereupon the motion was denied.

Under the provision of Penal Code, section 1181, subdivision 7, defendant was not entitled to a continuance under any and all circumstances as a matter of right. With respect to this provision 8 California Jurisprudence 440 (§ 461) contains the following: "It is provided in the code that if time is required by the defendant to procure affidavits of the witnesses by whom the newly discovered evidence is expected to be given, the court may postpone the hearing of the motion for such length of time as under all circumstances of the case may seem reasonable. The matter of allowing a continuance under this provision rests in the discretion of the court. In determining whether a continuance shall be granted, the court is called upon to determine whether the defendant is entitled to it, and if so for what period of time and whether such continuance

will promote justice. Therefore, the defendant should offer some evidence in support of his application. He should make a showing of what is expected to be set forth in the affidavits of the witnesses, and of a reason why the affidavits have not already been secured. He should also give the court reasonable grounds for his belief that the affidavits can be obtained.''

The correctness of the above statement of the law is fully supported by the decisions. *People* v. *Peyton,* 47 Cal.App.2d 214, 224 [117 P.2d 683] ; *People* v. *Buck,* 46 Cal.App.2d 558 566 [116 P.2d 160] ; *People* v. *Parisi,* 87 Cal.App. 208, 217 [261 P. 1072] ; *People* v. *Burrows,* 27 Cal.App. 428, 434 [150 P. 382] ; *People* v. *Ross,* 134 Cal. 256, 259 [66 P. 229]. None of the showing required by these authorities having been made or offered, the application was properly denied. *People* v. *Ross, supra; People* v. *Burrows, supra; People* v. *Parisi, supra.*

Appellant relies on *People* v. *Sarazzawski,* 27 Cal.2d 7 [161 P.2d 934], in which case the Supreme Court reversed a judgment and order denying a motion for a new trial because of refusal to permit counsel for the defendant a reasonable opportunity to prepare and present the motion. The circumstances shown in that case have no similarity whatever with those in the case at bar. They disclosed ''not only that counsel for the defendant was misled as to the date upon which he would be required to argue the motion, but also that the trial judge entertained an egregious misconception of his duties and of the relative powers and functions of the trial court and reviewing court in respect to such a motion.'' (p. 15.) No question of either kind is involved in this case.

The judgment and order appealed from are affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied March 14, 1947, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1947. Schauer, J., voted for a hearing.