UNITED STATES of America, Plaintiff-Appellee,

v.

Gene Logan ALGER, Defendant-Appellant.

No. 14000.

United States Court of Appeals Seventh Circuit.

Nov. 15, 1963.

Rehearing Denied Jan. 20, 1964.

William C. Erbecker, James Manahan, Indianapolis, Ind., for appellant.

Richard P. Stein, U. S. Atty., James R. Thornton, Asst. U. S. Atty., Indianapolis, Ind., George K. Shields, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

Defendant was charged in two counts of a four-count indictment. Count 1 charged defendant Alger, together with co-defendants Billings and McClung, and with Chester Mohler, referred to as a co-conspirator but not as a defendant, conspired to make counterfeit obligations of the United States of America and to pass, utter and publish counterfeit money.

Count 2 charged defendants Billings and McClung did counterfeit 696 ten dollar bills on April 3, 1961, and that defendant Alger did aid and abet the commission of that offense. The jury found defendant Alger guilty of charges contained in Counts 1 and 2.

Co-conspirator Mohler testified he first met Alger in the latter part of September 1960. That in October of 1960, Mohler, at the residence of defendant Alger, participated in a conversation between and among McClung, Billings and Alger. There was conversation as to whether Alger could make ten dollar bills. There was further conversation about acquiring an offset press to print money. Alger, who was in the printing business, stated he thought such a press could be acquired in Detroit.

There was testimony that some time about the 15th of December, 1960, Alger, McClung, Billings and Mohler were at the garage at Alger's home and that Alger reported he had made arrangements to obtain a printing press, and he stated that he could make counterfeit money.

There was further testimony that in January 1961, Alger, Billings and Mc-Clung were seen in the back yard of McClung's house taking a picture of a ten dollar bill. McClung was the son-in-law of Alger. Further, Mohler and McClung attempted to make a negative from the picture taken of the bill but the negative produced insufficient detail. Then Billings and Mohler cut and spliced some negatives and tried to make a satisfactory plate. Mohler testified defendant Alger showed him how to splice the negative. The attempt to print from these negatives was made at Alger's residence.

A considerable amount of the foregoing testimony was supplied by the co-conspirator, Mohler. As might be expected, Alger's attorney bitterly attacked the credibility of Mohler. However, it was the province of the jury to pass upon the question of credibility. United States v. Coduto, 7 Cir., 284 F.2d 464, 466.

However, Mohler's testimony is in many respects corroborated by the witness Everett German. Alger told German that the camera did not make a sufficiently sharp image. Alger brought the camera to German's house. Alger, McClung and Mohler were there present.

German testified that on a Sunday afternoon in January " * * * they were all there in the dark room or the shop I had built on my garage, discussing it." He testified " * * * an attempt was made to find out why the camera wouldn't cut a sharp picture."

German expressed his opinion that the reason a sharp picture was not obtained was due to the camera lens used. In February 1961, a camera lens was sold by Burke & James of Chicago. The sales slip was made out to Gene Agle. A copy of this sales slip was found on the person of defendant Alger at the time of his arrest.

Alger's next door neighbor, Jane May Crone, testified she usually got home from work about fifteen minutes to four in the afternoon, and that in the latter part of December 1960 and during January and February 1961, she observed a number of gatherings on the breezeway of Alger's home where the printing press

was located. Among those identified were Billings, McClung and Mohler. It was established that Alger usually did not reach his home before 4:30 or 5 o'clock p.m.

In support of the conviction of Alger for aiding and abetting, the evidence disclosed the finding of $22,680 in counterfeit money and a plate bearing the impression of the back of a ten dollar Federal Reserve Note in Alger's garage. Furthermore, these counterfeit notes were printed on Cranes Crest paper which was the same type of paper that was used in printing the notes found in Alger's garage.

Alger admitted that he told McClung that money was printed on 100% rag paper. He also admitted his signature to several documents that were needed in the procurement of the printing press.

In defendant's reply brief and upon oral argument before this Court, counsel for Alger relied principally upon the contention that inasmuch as the jury acquitted co-defendant, Billings, the evidence was manifestly insufficient to sustain the guilty verdict as to Alger. Defendant argues that the jury's verdict was inconsistent and that in finding Billings "not guilty" the jury was, in effect, saying that Mohler's testimony was perjured.

Counsel for Alger admits the existence of many cases which have held that the acquittal of one co-defendant creates no ground for reversing the cause as to the others, even when it appears that the evidence against both co-defendants was so similar as to render the jury's verdict inconsistent.

However, counsel seeks to distinguish such cases as Hayes v. State, 152 Tex.Cr. R. 65, 211 S.W.2d 216; State v. Thompkins, 220 S.C. 523, 68 S.E.2d 465; Bailey v. State, 239 Ala. 2, 193 So. 873; and People v. Mayes, 78 Cal.App.2d 282, 177 P.2d 590. Counsel argues that in Hayes where the charge was murder, the question of intent could have justified the jury resolving differently with respect to each co-defendant; that the same situation existed in Thompkins where the charge was assault with intent to kill; that in Bailey there could have been a distinction on the question of scienter and in Mayes, on the question of identity.

In United States v. Hare, 153 F.2d 816, this Court said at page 819: "The fact that a jury finds one party not guilty does not militate against a verdict of guilty as to a codefendant. * * * We look to the evidence to determine the guilt of an accused person, not to the verdict as to guilt of another defendant."

■ Taking the evidence in the light most favorable to the Government, there is sufficient evidence in the record before us to sustain the judgment of guilty on Counts 1 and 2 of the indictment.

In the main brief, defendant Alger claims error in the giving of certain instructions and refusal to give tendered instructions. Counsel for defendant did not make objection at the trial because the Court failed to give instructions which were tendered by defendant, nor was objection made to Instruction No. 28. Furthermore, the ground upon which Instruction No. 10 was objected to at the trial is not the ground for error urged on appeal.

The only instructions which we can properly consider are No. 21 and No. 26. We hold the objection to Instruction No. 26 is not well taken. As to Instruction No. 21, although the first three lines are somewhat confusing, we think when the instruction is considered as a whole, that there was no error.

In defendant's original brief, error was urged in admitting certain exhibits and testimony into evidence. No mention of this was made in the reply brief or in oral argument. However, we have considered these objections and hold that no error was committed.

Other objections by defendant Alger have been considered by us, but we think they are without merit.

The judgment of conviction of defendant Alger is

Affirmed.