[Crim. No. 2099. In Bank.—March 6, 1918.]

## THE PEOPLE, Respondent, v. JOSEPH SCHOON, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE SUFFICIENT.—Evidence examined and found sufficient to support a verdict of guilty of murder in the first degree.

ID.—QUALIFICATION OF JUROR—BELIEF IN INNOCENCE OF DEFENDANT.—Absolute belief of defendant's innocence is not an essential qualification of a juror, and it is not error to disallow a challenge based on the fact that the juror, on examination as to his qualifications to serve, could not say that he then had no doubt of the defendant's innocence.

ID.—EVIDENCE—CONTRADICTORY ANSWERS—DECISION OF TRIAL COURT CONCLUSIVE.—Where the answers of a juror to questions of counsel on examination as to his qualifications are contradictory, the trial court must decide which of the answers most truly show the juror's mind, and its decision is binding on the appellate court.

ID.—DIAGRAM FOR ILLUSTRATION—ADMISSIBILITY.—It was not error to admit in evidence, for the purpose of illustration only, a diagram shown to be accurate in all respects.

ID.—PERSONAL OBSERVATION NOT A CONCLUSION OF A WITNESS.—In a prosecution for murder, the statement of a witness that on hearing shots he looked out of a window and "thought he saw somebody lying on the sidewalk" was not a conclusion, but simply the result of personal observation of the witness, and refusal of the court to strike out that portion of an answer of the witness was not error, the objection to such testimony going not to its legality but purely to its weight, which is a question for the jury.

ID.—FACTS TACITLY ADMITTED BY SILENCE.—Evidence that when the defendant was arrested and a pistol taken from him, officers, in his presence and hearing, "broke" it and smelled it and said it had been recently fired, and that the defendant remained silent, was properly admitted, as tending to show a tacit admission of the truth of the statement, the weight of which was a question of fact for the jury.

ID.—CONFESSIONS—VOLUNTARY STATEMENTS—ADMISSIBILITY OF.—Voluntary statements of the accused denying the accusation and containing no acknowledgment of guilt, but stating facts which, with others, may tend to establish guilt, are not confessions, and are admissible without the preliminary proof required as to confessions.

ID.—APPEAL — FACTS ADMITTED BY STIPULATION — INVITED ERROR.—In view of the circumstances, prejudicial error cannot be predicated

on the admission by stipulation of evidence that one accused of
murder was under a sentence of deportation as an undesirable alien.

ID.—CONDUCT OF TRIAL—PRESUMPTION AGAINST ERROR.—The fact that
it was disclosed on the trial that the defendant was a member of
the I. W. W., cannot be assumed by the appellate court to have
influenced the jury in arriving at a verdict, an examination of the
record disclosing no ruling of the trial court in regard to the matter
that can be held erroneous.

APPEAL from a judgment of the Superior Court of San
Joaquin County, and from an order denying a motion for
a new trial.   D. M. Young, Judge.

The facts are stated in the opinion of the court.

W. H. Briggs, Fred H. Moore, S. Luke Howe, and Roy
Hibbitt, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—The defendant was informed
against for the crime of murder, in the unlawful killing of
John L. Brisco, a police officer of the city of Stockton. He
was convicted of murder in the first degree, and prosecutes
this appeal from the judgment and from an order denying
his motion for a new trial.

It is claimed that the evidence given on the trial is not
sufficient to sustain the verdict. Defendant and a com-
panion, who had come to Stockton on the evening of Feb-
ruary 4, 1917, and spent the evening and night up to about
1 o'clock visiting several saloons and a restaurant begging,
were arrested about 1 o'clock A. M., February 5, 1917, at the
corner of Weber and El Dorado Streets by deceased, and
taken by him toward the police station, which fronted on
Bridge Street, between El Dorado Street on the west and
Hunter Street on the east, distant about 104 feet from El
Dorado Street. Deceased turned with his two prisoners
from El Dorado Street into Bridge Street. Almost imme-
diately thereafter was heard a shot in the vicinity of the
police station, and, according to the testimony of many wit-
nesses, shortly thereafter three shots in quick succession.
There were officers in the police station, and many people

in the Hotel Stockton, which occupied an adjoining block, who were roused by the shooting and who were able to give material evidence. There was testimony to the effect that immediately after the first shot a voice was heard to cry, "Oh, my God!" and then came the three shots in quick succession. A little alley adjoined the police station on the east, running from Bridge to Channel Street. On the sidewalk of Bridge Street, at the easterly corner of this alley, the deceased was found prostrate and dying from a bullet wound through his body. Near him was his revolver with three empty cartridges therein. The defendant and his companion had disappeared and the companion has never been found by the authorities. The testimony quite clearly indicated that, after being shot, the deceased had attempted to pursue his assailant or assailants, firing three shots from his revolver, and had succeeded in reaching the corner where he fell. The deceased was at once taken to the emergency hospital, where he almost immediately died. His body was then taken to the morgue, where, on removing his clothing, a bullet was found between his skin and shirt which gave every evidence of being the bullet which had passed through his body. Within about an hour from the time of the shooting the defendant was captured by the officers at a point quite a distance from the police station, where apparently he was endeavoring to conceal himself. There was testimony that he was perspiring and breathing heavily, and gave every indication of having been running. A 38-caliber pistol was found in one of his pockets, fully loaded, and an extra cartridge in a vest pocket. There was testimony on the part of those who examined the pistol to the effect that it showed it had been very recently discharged. There was testimony to the effect that the bullet found in the clothing of deceased was in all respects such a bullet as would be discharged from defendant's pistol. There was also evidence to the effect that the coat of deceased showed that at the time of the shooting of deceased the muzzle of the weapon was so close to his body that it left the carbon from the powder on his coat. We are at a loss to see how, in the face of this proof, it can be held that the verdict is without sufficient support in the evidence.

Certain errors in the proceedings in the trial court are alleged.

1. It is claimed that the trial court erred in disallowing the challenge for actual bias to one Franklin C. Turner, who had been called and examined as to his qualifications to serve as a juror. The record shows that Mr. Turner did not serve as a juror in this case. He was excused on peremptory challenge by the defendant. Regardless of this, however, the court did not err in disallowing the challenge for actual bias. His examination showed him to be absolutely qualified in all respects to serve as a juror. He had formed or expressed no opinion, had no prejudice whatever, it would not make any difference that the man was an ex-convict or an I. W. W., he would require the state to prove the case beyond a reasonable doubt before he would convict, he would presume him innocent until the evidence established his guilt. The whole contention of appellant in regard to this juror is based on the fact that he could not say that, as matter of fact, he then had no doubt of his innocence. It has never been held that absolute belief of a defendant's innocence is an essential qualification of a juror. All that he meant by his statement was that in view of the charge there might be something against the defendant.

2. It is claimed that the court erred in disallowing a challenge for actual bias to Juror F. E. Russell. Mr. Russell was the twelfth juror sworn to try the cause, and the peremptory challenges of the defendant had then been exhausted. To our minds, a reading of the entire testimony of the juror on his *voir dire* shows that he was entirely unprejudiced, and in such a condition of mind that he could and would try the case fairly and impartially. While some of his answers, taken alone, might indicate a possible prejudice in the event that certain facts appeared in evidence, the case is one fully covered by what was said in *People* v. *Ryan,* 152 Cal. 364, 371, [92 Pac. 853], to the effect that where answers of the juror to questions of counsel are contradictory, the trial court must decide which of the answers most truly shows the juror's mind, and its decision is binding on the appellate court. We see no reason to doubt the correctness of the action of the trial court in this matter.

3. The map used in evidence as a diagram for the purpose of illustration only was shown to be an accurate diagram in all material respects. We see no error in the action of the trial court in regard thereto.

4. Why it was error to admit in evidence a pair of gloves found in a pocket of the clothing of deceased is not pointed out, and we can see no ground for the claim.

5. The trial court did not err in refusing to strike out a portion of an answer given by Mr. Neumiller, a witness who, hearing the shots, went to his window in the Hotel Stockton, from which he could see the police station and Bridge Street in the vicinity thereof. He said: "I saw someone come from the police office and rush down Bridge Street toward Hunter, *and I thought then I saw somebody lying on the sidewalk there opposite the vestibule of the saloon.*" The witness was simply stating the result of his personal observation. In substance, he said that looking at the place indicated it appeared to him that somebody was lying on the sidewalk there. He was not positive as to this, but it then seemed to him that such was the case. There is no legal objection to such testimony. Whatever objection there may be to the same goes purely to its weight, which is a question for the jury. (See, as bearing on this matter, *People* v. *Rolfe,* 61 Cal. 540; *People* v. *Soap,* 127 Cal. 410, [59 Pac. 771]; 1 Wigmore on Evidence, sec. 658, p. 753.)

6. No reason is stated why the court erred in refusing to strike out a portion of the testimony of L. J. Hansen, and we can conceive of none.

7. What we have said as to the refusal of the court to strike out a portion of the testimony of Mr. Neumiller applies equally to the action of the court in regard to the testimony of Mr. Tulan.

8. When the defendant was arrested and his pistol taken from him, some of the officers, in his immediate presence and hearing, broke it and smelled it and said it had been recently fired. The defendant remained silent, making no denial. A motion to strike out testimony of Frank Prahser to this effect was denied. In view of our decisions there was no error in this. Defendant's conduct in the face of this action and this statement of the officers, in his presence and hearing, there being no reason why he would not feel at liberty to reply and deny, was evidence tending to show a tacit admission by him of the truth of the statement of the officers, the weight of which was a question of fact for the jury. (See *People* v. *Amaya,* 134 Cal. 536, [66 Pac. 794].)

9. The same thing is true as to the testimony of Dr. L. R. Johnson that "Mr. Perryman said 'this is the gun we took from him, Doctor.'" It may properly be added that there was no conflict of evidence as to the identity of the pistol, that matter being proved by a great amount of testimony which was in no degree questioned.

10. A shorthand reporter was allowed to testify to statements made by the defendant to the district attorney and other officers shortly after his arrest, in response to questions asked by the district attorney. A great part of this came in without objection of any kind being made. A part was introduced by defendant's attorney. The objection urged here is that the statements were not free and voluntary, but were obtained through the "old-fashioned third degree sweat process." The record indicates that there was no improper inducement of any kind, and that the defendant when questioned in a perfectly proper and ordinary way, without the slightest pressure, answered freely. There was no acknowledgment of guilt by the defendant in these statements. He steadily insisted that he did not discharge his pistol that night; that it had not been out of his pocket until taken therefrom at the time of his arrest; that he saw no one shoot; that he heard some shots, saw his companion run, and ran himself, etc. There was nothing in the nature of a confession. As said in *People* v. *Miller,* 122 Cal. 87, [54 Pac. 524]: "The term 'confession' is restricted to acknowledgments of guilt (1 Greenleaf on Evidence, 170). This court said in *People* v. *Parton,* 49 Cal. 632, 'An admission of a fact, not in itself involving criminal intent, is not to be rejected as evidence (without the preliminary proof) merely because it may, when connected with other facts, tend to establish guilt.'" (See, also, *People* v. *Le Roy,* 65 Cal. 613, [4 Pac. 649] ; *People* v. *Velarde,* 59 Cal. 461.)

11. For some reason defendant's attorney deemed it to defendant's advantage to get before the jury the fact that at the time of the shooting defendant was under sentence of deportation from the country to his native country (Holland) as an undesirable alien, having been paroled from the state prison at San Quentin on that condition, and that while being transported in the custody of federal officers with that end in view, he had escaped from such officers some-

where "in the Dakotas," about two months before, and had ever since been at large. He had produced a witness to prove certain of these facts, when, at his own suggestion, these matters were stipulated. The same things were subsequently substantially disclosed by the testimony of admissions and statements made by the defendant. It is now urged that the acceptance of such a stipulation was prejudicial error necessitating a reversal. We do not see how any claim of error can be predicated on this action of the court, insisted on, as it was, by the defendant's attorney. It may have been an ill-advised thing for the defendant to himself show these facts, but as to that we are not at all satisfied. Doubtless the district attorney, who, by reason of defendant's previous admissions, knew the facts, could have made proof thereof as evidence of motive for the killing—to show that the circumstances were such that the defendant deemed it necessary to resort to any means in order to escape from the custody of the officer. Perhaps the attorney for the defendant knowing this, very properly concluded that it would be advisable for defendant to frankly admit the facts himself, rather than have the matters proved against him by the state, especially as he might fairly claim that such facts explained his flight from the scene of the shooting on a theory other than that of guilt in the matter of the killing, viz., the desire to escape a return to the state prison for violation of his parole, and deportation, which would be almost certain to follow his arrest and any investigation into his antecedents. Certainly we would not be warranted in reversing the judgment because the defendant, through his counsel, saw fit to adopt this policy in his defense.

On the oral argument much stress was laid on the fact that it was disclosed on the trial that the defendant was a member of the "Industrial Workers of the World," or the "I. W. W.," as it is commonly known, having joined it two or three months before his arrest. It is claimed that this must have prejudiced him in the minds of the jurors. An examination of the record has disclosed no action or ruling of the trial court relative to this matter that can be held erroneous. We are not warranted in assuming that the jurors were influenced by this fact in arriving at a verdict.

No other point is made in support of the appeal. We have

examined the whole record and find therein nothing that would warrant us in ordering a reversal.

The judgment and order denying a new trial are affirmed.

Victor E. Shaw, J., *pro tem.*, Melvin, J., Shaw, J., and Sloss, J., concurred.

Rehearing denied.