[Civ. No. 40065. Second Dist., Div. Four. Apr. 5, 1973.]

WILLIE B. LEONARD, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

## COUNSEL

Roger Arnebergh, City Attorney, George J. Franscell, Assistant City Attorney, and Louis H. De Haas, Jr., Deputy City Attorney, for Defendant and Appellant.

Margolis, McTernan, Smith, Scope & Sacks, Paul Henry Abram and Ben Margolis for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—Defendant City of Los Angeles appeals from a judgment entered against it on plaintiff's suit for false imprisonment. Following a nonjury trial the court found that defendant city had, without probable cause, wrongfully arrested and imprisoned plaintiff.

The evidence and the superior court's findings disclose that the arrest occurred in Los Angeles on August 16, 1965. Plaintiff was charged by the officers with violating Penal Code section 485, a misdemeanor involving lost property valued at less than $200. The superior court which heard plaintiff's civil action found that the officers did not have probable cause to break and enter plaintiff's residence, or to search the residence or arrest plaintiff; that they failed to comply with Penal Code section 844 and that they wrongfully imprisoned plaintiff.

We are here concerned with the effect of a stipulation that probable cause existed, made in the criminal case between the city attorney and Leonard's defense counsel prior to the time the criminal complaint was dismissed in the municipal court. The superior court found that, when plaintiff appeared in the municipal criminal court on October 15, 1965, "after consulting his attorney and being informed of all the consequences, plaintiff WILLIE B. LEONARD, in open Court, stipulated that his arrest was made with probable cause" and thereafter the criminal complaint was dismissed. However, the superior court stated, in its conclusions of law, that the foregoing stipulation as to probable cause "between WILLIE B. LEONARD, JR., and the CITY OF LOS ANGELES in the criminal proceeding out of which this cause of action arose, is a conclusion of law and is not binding upon this Court in the within civil action." It is this stipulation with whose effect we are concerned, for if the stipulation established probable cause for the officers to enter and search the premises and arrest plaintiff, the civil action for false imprisonment must fail and the judgment be reversed.

There are so many cases dealing with the subject matter and the effect of stipulations (see e.g., 83 C.J.S., Stipulations, p. 1; 50 Am.Jur., Stipulations, p. 605; 46 Cal.Jur.2d, Stipulations, p. 1; 21B McK. New Cal. Digest, Stipulations, p. 623) that this opinion will not be burdened with a recitation of them. ■ Suffice to say, it generally is held that a stipulation between the parties may not bind a court on questions of law, and this includes legal conclusions to be drawn from admitted or stipulated facts. *(People* v. *Jones* (1936) 6 Cal.2d 554, 555 [59 P.2d 89]; *San Francisco Lumber Co.* v. *Bibb* (1903) 139 Cal. 325 [73 P. 864]; *Haight* v. *Green* (1861) 19 Cal. 113; *Brunt* v. *Occidental Life Ins. Co.* (1963) 223 Cal. App.2d 179, 183 [35 Cal.Rptr. 492]; *Warburton* v. *Kieferle* (1955) 135 Cal.App.2d 278, 286-287 [287 P.2d 1]; *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 821 [278 P.2d 91]; Annot. 92 A.L.R. 663.) ■ A party to a criminal action can, however, and with binding effect, stipulate to evidentiary matters and to the existence or nonexistence of facts *(People* v. *Schoon* (1918) 177 Cal. 678, 683-684 [171 P. 680]) and to any of the steps of an action or proceeding. *(In re Battelle* (1929) 207 Cal. 227, 252-254 [277 P. 725, 65 A.L.R. 1497]; *People* v. *McClain* (1962) 209 Cal.App.2d 224, 226-228 [26 Cal.Rptr. 244]; *People* v. *Rogers* (1962) 207 Cal.App.2d 254, 260 [24 Cal.Rptr. 324]; *People* v. *Zavaleta* (1960) 182 Cal.App.2d 422, 430 [6 Cal.Rptr. 166]; *People* v. *McCoy* (1953) 115 Cal.App.2d 565, 568 [252 P.2d 371]; *People* v. *Houser* (1948) 85 Cal.App.2d 686, 695 [193 P.2d 937]; *People* v. *Denningham* (1947) 82 Cal.App.2d 117, 119 [185 P.2d 614]; *People* v. *Wilson* (1947) 78 Cal.App.2d 108, 119-120 [177 P.2d 567]; *People* v. *Podwys* (1936) 11 Cal.App.2d 426 [53 P.2d 1043]; *People* v. *Garvey* (1928) 93 Cal.App. 497, 499, 503 [269 P. 702].) A binding stipulation admitting evidence may be made, even if such evidence is otherwise inadmissible. It also is held that, by stipulation, a criminal defendant may waive benefits granted to him by the Constitution. *(People* v. *Houser, supra,* 85 Cal.App. 2d at p. 695.)

■ Whether reasonable or probable cause exists, generally presents a question of mixed fact and law. Here, however, the parties to the criminal proceedings stipulated to no facts but only that the arrest was made with probable cause.

Considering the circumstances under which the stipulation was made one may speculate that, if it were not made, the criminal action would not have been dismissed but would have gone to trial, the prosecution being prepared to present its evidence to show probable cause. If, at such trial, defendant wished to stipulate to the existence of probable cause to arrest and search he certainly could have done so. Were a contrary

rule to prevail, a defendant would be deprived of a common tactic, namely, the opportunity by stipulation to exclude evidence which he believed might otherwise be disadvantageous to him. (See e.g., *People v. Schoon, supra,* 177 Cal. at p. 684.) Also, such a contrary rule could unduly extend a trial since, if defendant is satisfied that the facts against him would be established by the People's evidence, court time would be wasted by requiring the People to produce such evidence. ■ The right to make a binding stipulation is not lost by the fact no trial is held. A litigant can propose a stipulation before, as well as during, trial to the effect that it will be unnecessary for the other side to produce evidence on a certain point and to concede that the point is established.

■ When a proposed stipulation is accepted by the other side, such stipulation becomes binding upon the court so long as it is not illegal or contrary to public policy. (*In re Bailleaux* (1956) 47 Cal.2d 258, 259 [302 P.2d 801]; *Hehr v. Swendseid* (1966) 243 Cal.App.2d 142, 149 [52 Cal.Rptr. 107]; *People v. Selz* (1955) 138 Cal.App.2d 205, 208-209 [291 P.2d 186]; *Estate of Howe* (1948) 88 Cal.App.2d 454, 458 [199 P.2d 59]; *People v. Raner* (1948) 86 Cal.App.2d 107, 110 [194 P.2d 37]; *Capital National Bank v. Smith* (1944) 62 Cal.App.2d 328, 343 [144 P.2d 665].) In the criminal case pending against Leonard the only practical effect of the stipulation, had the case gone to trial, would have been to require that items seized in the search be admitted into evidence; the lawfulness or unlawfulness of Leonard's arrest would not have been relevant to proving him guilty of violating Penal Code section 485.

■ We are not unaware that the stipulation undoubtedly was solicited and made in order to foreclose the very type of civil suit with which we are here involved. However, we are not now concerned with its purpose but with the right of the parties to make such a stipulation and its binding effect upon the trial court in the civil case.

■ A stipulation may, but need not, constitute a contract. (*Harris v. Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447, 453-454 [49 Cal. Rptr. 610]; *L. A. City Sch. Dist. v. Landier Inv. Co.* (1960) 177 Cal. App.2d 744, 750-751 [2 Cal.Rptr. 662].) If the stipulation had been made in consideration of the dismissal of the criminal charge, a different situation than here exists might arise. Thus, if made in return for a promise to dismiss, such stipulation could be treated as a contract and subject to a determination whether such a promise contravened public policy. (See e.g., *Keating v. Morrissey* (1907) 6 Cal.App. 163, 169 [91 P. 677]; 6A Corbin on Contracts, § 1421; Rest., Contracts, § 549.) We note, incidentally, that the most the prosecutor could have promised

would have been that he would move for a dismissal, since the authority to grant the motion, or to deny it, is not within the province of counsel, but rests exclusively with the court. (Pen. Code, § § 1385, 1386; *People v. Romero* (1936) 13 Cal.App.2d 667, 670 [57 P.2d 557].) No such promise here appears.

It must be observed that the court in the criminal case dismissed the misdemeanor action. Under such circumstances, the criminal charge could not be refiled. (Pen. Code, § § 1385, 1387; *In re Krieger* (1969) 272 Cal. App.2d 886, 890 [77 Cal.Rptr. 822].)

■■■ Respondent at no time moved to be relieved from his stipulation and it has been ruled that " 'Relief from a stipulation may not be granted when requested for the first time upon appeal. The proper course is to make timely application to the court in which the stipulation was made, by a motion requesting relief, notice of which should be given to the opposing party. A hearing should then be had on affidavits and counter-affidavits.' " (*Warburton v. Kieferle, supra,* 135 Cal.App.2d at p. 286; 46 Cal.Jur.2d, Stipulations, § 18, p. 46.) Respondent never claimed the stipulation was entered into by mistake, inadvertence, fraud or misrepresentation, or did he ask to be relieved of its effect. (*People v. Dugas* (1966) 242 Cal.App.2d 244, 252 [51 Cal.Rptr. 478].)

This case is to be distinguished from those cases relied upon by respondent wherein facts were stipulated to and a further stipulation was made as to the legal effect of those facts, i.e., *Swift & Co. v. Hocking Valley Ry. Co.* (1917) 243 U.S. 281, 288-289 [61 L.Ed. 722, 724-725, 37 S.Ct. 287]; *Michel v. Smith* (1922) 188 Cal. 199, 205-210 [205 P. 113]; *San Francisco Lumber Co. v. Bibb, supra,* 139 Cal. 325 and *Aitken v. White* (1949) 93 Cal.App.2d 134 [208 P.2d 788]. In the circumstances presented in such cases, the legal effect of the facts stipulated to was for the court to determine, as a matter of law. But in our case, no facts were agreed upon by stipulation.

We distinguish our situation from that involved in *MacDonald v. Musick* (9th Cir. 1970) 425 F.2d 373, also relied on by respondent, wherein, after a criminal defendant declined to stipulate to probable cause, the prosecution charged him with an additional crime of which he was convicted. He was found not guilty of the crime originally charged. The court held that defendant's conviction of the added charge was unlawful and granted habeas corpus, concluding that coercion had been exercised by the adding of the second charge. We can speculate that coercion could not have been found if the defendant, after refusing to stipulate, had been

tried on the initial charge, only. Furthermore, while it may be said in our case that Leonard surrendered a property right (the right to file a civil action, see: *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 320-321 [202 P.2d 73, 6 A.L.R.2d 461]), it is further to be said that he did so voluntarily, and not under coercion as in *MacDonald,* so that no public policy militates against the validity of Leonard's stipulation. Also, and as a further basis for distinguishing *MacDonald,* no stipulation was there entered into so that the court was not called upon therein to determine what effect a stipulation might have had.

Our record does not disclose evidence of coercion. The mere fact that Leonard, as a criminal defendant, stipulated to probable cause no more establishes coercion than pleading guilty to a lesser included offense, pursuant to a plea bargain, establishes that such plea was coerced. (*People* v. *West* (1970) 3 Cal.3d 595, 603-608 [91 Cal.Rptr. 385, 477 P.2d 409].) Furthermore, and in respect to any claimed coercion, the trial court specifically found that plaintiff authorized the stipulation "after consulting his attorney and being informed of all the consequences."

*Nachman Spring-Filled Corp.* v. *Spring Products Corp.* (2d Cir. 1935) 74 F.2d 710, also relied upon by respondent, is not pertinent. That case held that a stipulation entered into between the appellant there and a third party in a separate suit was immaterial to the action before the court, for which reason the stipulation could not be used to estop appellant. Overlooked by respondent in the case before us is the fact that here the trial court specifically concluded the stipulation in the criminal case was entered into between plaintiff and appellant, the City of Los Angeles, and not some third party as in *Nachman.*

It is our opinion the trial court erred in holding that the stipulation was "a conclusion of law and is not binding upon this Court in the within civil action."

In view of our opinion, we need not consider whether the evidence offered in the civil case, following the court's refusal to be bound by the stipulation, did, or did not, establish probable cause as a matter of law.

The judgment is reversed.

Jefferson, J., concurred.

**FILES, P. J.**—I would affirm the judgment. It is of no importance that the stipulation was in the form of a conclusion. If Leonard had stipulated to probable cause in order to expedite the trial of the criminal charge,

the criminal trial could properly have been conducted on that basis. But that is not the case here.

The controlling facts are these: While in the municipal court as a defendant in a criminal case, Leonard stipulated that his arrest by Los Angeles police officers had been made with probable cause. Dismissal of the criminal case followed immediately.

The stipulation made at that time served no purpose in the criminal case. The only possible effect was to bar a civil action for false arrest. It was not a coincidence that the stipulation was given and received in the courtroom where the criminal prosecution was awaiting trial. If Leonard agreed to the stipulation for any reason other than to ease his way out of the criminal prosecution, no one has suggested what it was. Whether we say the prosecution inspired the stipulation, or the stipulation induced the dismissal, or whether one was "in consideration of" the other, all seem to me quite immaterial.

From the circumstances, the only rational conclusion is that the pendency of the criminal prosecution was used as an opportunity to obtain from Leonard a surrender of his property in favor of the City of Los Angeles. Beyond any doubt, Leonard's cause of action against the city was his property. (See Civ. Code, § 14, subd. 3.)

On the ground of public policy I would not allow the city to benefit from such a transaction.

It is familiar law that, except for a prosecutor's promise of immunity in exchange for testimony, a bargain whose object is to prevent or bring an end to a criminal prosecution is illegal. For various applications of this principle see *Bowyer* v. *Burgess* (1960) 54 Cal.2d 97 [4 Cal.Rptr. 521, 351 P.2d 793]; *Ogden* v. *Ford* (1918) 179 Cal. 243 [176 P. 165]; *People* v. *Beggs* (1918) 178 Cal. 79, 84 [172 P. 152]; *Keating* v. *Morrissey* (1907) 6 Cal.App. 163, 169 [91 P. 677]; *MacDonald* v. *Musick* (9th Cir. 1970) 425 F.2d 373; 6A Corbin on Contracts, section 1421; Restatement, Contracts, section 549. One aspect of the underlying policy is that the hazard of criminal prosecution must not be used to influence the settlement of civil disputes. In the application of this principle the merits of both the criminal charge and the civil claim are immaterial. Thus, for example, the recovery of the value of stolen goods by exploiting the culprit's fear of prosecution may be unlawful. (*People* v. *Beggs, supra,* 178 Cal. 79.)

If during the course of Leonard's prosecution he had handed to the prosecutor a sum of money, or a promissory note payable to the City of Los Angeles, no one would condone the transaction. The city's attempt

to deprive him of his damage claim has no better standing in law or good morals than would its insistence upon retaining any other property which he had delivered under similar circumstances.

It bears mentioning that the city was not a party to the criminal prosecution, even though the city attorney served as prosecutor. The criminal charge was brought in the name of and by the authority of The People of the State of California. (See Gov. Code, § 100.) The city's interest was that of employer of police officers who had injured plaintiff, and because of that the city was liable in damages for the officers' wrongdoing. Leonard's cause of action against the city for false arrest did not depend at all upon whether he was guilty or innocent of the penal offense charged.[1] No matter what legalism may be invoked to classify the transaction, the unvarnished truth is that in claiming the benefit of the stipulation, the city is using a criminal prosecution as means of obtaining property to which the city is not entitled.

The stipulation which the city relies upon here is not at all analogous to the "plea bargain" as explained and approved in *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409]. Where the People and the defendant agree upon the terms of disposition of a criminal charge, that agreement is reported to the court and becomes effective only if the court itself so determines. If the court is not satisfied that the result is just and proper, the proposal is rejected and neither the proffered plea nor the underlying agreement has any further effect. The "plea bargain" is binding only when the court accepts it and makes it the basis of the court's decision.

It is doubtful that a negotiated plea could properly include a disposition of civil litigation which was unrelated to the defendant's guilt or innocence of the criminal charge. Be that as it may, we have nothing of the kind here. The City of Los Angeles is not here attempting to enforce anything considered or decided by the municipal court in the course of the criminal prosecution. The only ruling made by the court in the criminal case was "Complaint dismissed for lack of prosecution."

I cannot conceive of any good purpose which is served by allowing the

---

[1]The prosecution of Leonard for violation of Penal Code section 485 was based upon the officers' discovery, after they had unlawfully broken into Leonard's home, that he had a shotgun in his closet, and their subsequent discovery that this gun had been reported stolen in 1949. The police admittedly had no information or belief that this gun was in the home when they entered.

city to escape payment of a valid claim in this manner. Allowing a city to obtain immunity in this way compounds the injustice to the injured citizen and removes a useful incentive to the local government to supervise its officers for the prevention of such wrongs.

Respondent's petition for a hearing by the Supreme Court was denied May 30, 1973. Tobriner, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.