Filed 3/2/2016

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ANTHONY TOSTE, | 2d Civil No. B256946 |
| Plaintiff and Appellant, | (Super. Ct. No. 1392249) (Santa Barbara County) |
| v. | |
| CALPORTLAND CONSTRUCTION et al., | |
| Defendants and Respondents. | |

In this wrongful death action, Anthony Toste appeals a defense judgment entered in favor of respondents CalPortland Construction, CalPortland Company (CalPortland), V&J Rock Transport, Inc., and Paul Michaelson. Appellant's father, Dan Toste, died after Michaelson backed up a construction truck and hit Toste during a road paving project. Michaelson, an employee of V&J Rock Transport Inc., was providing truck hauling services for the asphalt supplier, CalPortland. The jury, by special verdict, found that Michaelson was negligent but that his negligence was not a substantial factor in causing the harm suffered. Appellant contends that 1. the verdict is not supported by the evidence, 2. the jury was misinstructed, 3. the trial court erred in not granting a new trial, and 4. respondents were erroneously awarded expert witness fees as a cost item based on their pretrial offers to compromise (Code Civ. Proc., § 998).[1]

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

The judgment is affirmed as to CalPortland. We reverse the cost award to Michaelson & V&J Rock Transport and remand for reconsideration in light of newly amended section 998, subd. (c)(1). (Stats. 2015, ch. 345 (A.B. 1141), § 2, eff. Jan. 1, 2016.) In all other respects, the judgment is affirmed.

*Facts and Procedural History*

On June 17, 2010, Michaelson, a truck driver for V&J Rock Transport, backed his truck and ran into and over Dan Toste at an asphalt overlay project on State Route 135. Toste, the project general contractor, was standing behind the truck trailer in a blind spot. Michaelson agreed to take a drug test and said that he might be positive for marijuana. Michaelson had smoked marijuana to treat a headache two days before the accident and had a high level of marijuana metabolite in his urine.

Before trial, Michaelson and V&J Rock Transport made two offers to compromise ($200,001 and $750,001) that were rejected by appellant. (§ 998.) CalPortland's offer to compromise ($15,000) was also rejected.

The case was tried on negligence and negligence per se theories. With respect to negligence per se, the jury was instructed that a Federal Motor Carrier Safety Regulation (49 C.F.R. § 382.213) prohibited truck drivers from using marijuana. (CACI 4520.) The jury was also instructed that Vehicle Code section 23152 prohibited a person from driving a vehicle while under the influence of a drug. With respect to the negligence instructions, appellant claimed that Michaelson's truck had an inaudible backup alarm and that Michaelson backed up in a negligent manner.

The jury, by special verdict, found Michaelson was negligent (10-2) but his negligence was not a substantial factor in causing the death (9-3). The jury found that V&J Rock Transport (Michaelson's employer) and CalPortland were not negligent.

Appellant moved for new trial based on insufficiency of the evidence and juror misconduct. The motion stated that juror Troy Breedlove allegedly told fellow jurors that he was familiar with California Highway Patrol truck safety inspections and that V&J Rock Transport did nothing wrong if the truck passed a safety inspection. Five

2

jurors, including Breedlove and the jury foreperson, filed a declaration that Breedlove made no such statement.  (See discussion *infra* at pp 10-12.)

The trial court denied the motion for new trial and awarded expert witness fees based on the pretrial offers to compromise.  (§ 998.)  Michaelson and V&J Rock Transport were awarded $98,645.22 costs including $67,497.25 expert fees.  CalPortand was awarded $25,341.44 costs including $17,034.20 expert witness fees.

*Causation*

Appellant contends that the evidence compels the finding that Michaelson's negligence was a substantial factor in causing the fatality.  As in any substantial evidence case, we view the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict to support the judgment.  (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24.)  Even if the jury's findings are against the weight of the evidence, they will be upheld if supported by evidence that is of ponderable legal significance and reasonable in nature.  (*Ibid.*)

Appellant claims that it was stipulated that Michaelson "caused" the traffic fatality.  Not so.  The parties stipulated that Toste's death was caused by blunt force trauma as a result of being run over by the truck.  The stipulation explained how Toste died but did not eliminate the contested issue of liability: causation.  (See e.g., *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [a stipulation like a contract, must be interpreted so as to give effect to the mutual intent of the parties]; *Leonard v. City of Los Angeles* (1973) 31 Cal.App.3d 473, 476 [stipulation does not bind court on questions of law and legal conclusions to be drawn from stipulated facts].)  Had Michaelson stipulated to causation, it would have been, in effect, an admission of liability.  The trial court would not have instructed that appellant had to prove that Michaelson's negligence was a substantial factor in causing the harm suffered.  (CACI 400, 420, 431.)  Appellant's trial attorney told the jury that "substantial factor is a big deal, because it's used in a jury instruction.  'Was it a substantial factor?'  And it's defined for you here, [CACI] 430.  'A substantial factor in causing harm is a factor that a

3

reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.' "

To prove causation, the key issue in the case, appellant had to show that Michaelson's breach of duty (i.e., the duty not to operate a commercial truck with marijuana in his system) was a substantial factor in bringing about the harm suffered. (See e.g., *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 480.)  As we shall explain, he did not do so.

*Negligence Per Se*

Appellant's principle theory of liability was negligence per se.  Appellant argued that truck drivers must be drug free and "[i]f they are not and someone is injured or killed, they are responsible for that harm. . . ."  The trial court instructed the jury with Federal Motor Carrier Safety Regulation 49 C.F.R. § 382.213.[2]  This regulation prohibits a truck driver from using marijuana and that if the jury found "the violation was a substantial factor in bringing about the harm," it must find Michaelson negligent.  (CACI 420.)  Under the doctrine of negligence per se, appellant "borrowed" the federal safety regulation to prove duty of care.  But appellant still had the burden of proving causation. (See *David v. Hernandez* (2014) 226 Cal.App.4th 578, 584.)

In *David v. Hernandez, supra*, a northbound truck driver parked on the southbound side of a highway for a rest break.  Plaintiff hit the truck as it crossed in front of plaintiff to get into the northbound lane of traffic.  (*Id.*, at p. 582-583.)  The trial court instructed on negligence per se, i.e., that state law prohibited truck drivers from parking in the direction of oncoming traffic (Veh. Code, § 22502).  (*Id.*, at p. 584.)  The jury found the truck driver was negligent but that his negligence was not a substantial cause of the collision.  Counsel argued that " 'a finding of causation flows automatically from the

---

[2] 49 C.F.R. § 382.213(a) provides:  "No driver shall report for duty or remain on duty requiring the performance of safety sensitive functions when the driver uses any drug or substance identified in 21 C.F.R. § 1308.11 Schedule I".  The jury was instructed that marijuana is a Schedule I drug included in 21 C.F.R. § 1308.11.

4

negligence finding' " but plaintiff was distracted and trying to operate a laptop computer before the collision. (*Id.*, at p. 581.) "The jury could have reasonably concluded that the collision was caused by David's inattentiveness to the road ahead of him rather than any act of negligence committed by Hernandez." (*Id.*, at p. 588.)

Sitting as an independent trier of fact, the trial court denied a motion for new trial but found that " ' "the tail end of the truck would not have been in the southbound lane but for its having entered from the right, a position in which it had no legal right to be." ' " (*Id.*, at p. 589.) We reversed and remanded for new trial because the trial court impliedly found that the truck driver was negligent per se and the negligence was a substantial factor in causing the collision. (*Id.*, at p. 591.)

Unlike *David v. Hernandez,* the trial court did not find that violation of the federal safety regulation was a substantial factor in causing the traffic fatality. Where the trial court denies a motion for new trial, it is presumed that the verdict is correct. (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 473.) It is not our function to reweigh the evidence. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.) The denial of a new trial motion based on insufficiency of the evidence will be reversed only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted. (*Fassberg Construction Co. v. Housing Authority of City of Los* Angeles (2007) 152 Cal.App.4th 720, 752.)

Appellant concedes that the jury did not find that Michaelson was negligent per se. The jury did find that Michaelson was negligent without specifying the way in which he was negligent.[3] Appellant argues that the jury was required to find causation as

---

[3] The case was submitted to the jury based on three theories of negligence: (1) that Michaelson violated federal or state law and was negligent per se; (2) that he drove a truck with a faulty backup alarm, and (3) that he backed up in a negligent manner. Appellant concedes that the jury did not find Michaelson was negligent per se or that he drove with a faulty backup alarm. The sole remaining theory of liability was that

5

a matter of law but "[t]his ignores the factfinding power of the jury." (*Jonkey v. Carignan Construction Co., supra*, 139 Cal.App.4th at p. 25.)  " 'Where, as here, there is no special finding on what negligence is found by the jury, the jury's finding is tantamount to a general verdict.  As long as a single theory of negligence is lawfully rebutted on a lack of causation theory, it matters not that another theory of negligence is not so rebutted.' [Citation.]" (*David v. Hernandez, supra*, 226 Cal.App.4th at p. 586.)

The jury impliedly found that Michaelson's use of marijuana was not a substantial factor in causing the traffic fatality because there was no drug impairment.  A co-worker, Fred Holland, spoke to Michaelson minutes before the accident and observed no signs of marijuana impairment.  Before the accident Michaelson transported and unloaded two truck/trailer loads of asphalt without incident.  California Highway Patrol Officer Anthony Villanti and CalPortland Safety Manager Treena Leonard interviewed Michaelson minutes after the accident and observed no signs of drug impairment.  Doctor Richard Clark, a toxicologist, opined that Michaelson was not drug impaired.

The evidence also shows that the manner in which Michaelson operated the truck was not a substantial factor in causing the harm suffered.  Michaelson looked in his mirrors and slowly backed up 1 to 1.5 miles per hour, about half the walking speed of an adult.  An accident reconstruction expert, Mark Whelchel, testified that Toste was standing in a blind spot and that the movement of the truck would have given Toste notice that Michaelson was about to back up.  The backup alarm on Michaelson's truck was audible up to 200 feet away.  Had Toste been attentive, he would have heard the backup alarm and sensed the movement of the truck as it jostled in position before backing up.  (See e.g., *Jonkey v. Carignan Construction Co., supra,* 139 Cal.App.4th at p. 26 [construction worker focused on cell phone conversation and did not heed warnings

---

Michaelson backed up in a negligent manner but the jury found that Michaelson's negligence was not a substantial factor in causing Toste's death.

6

that scaffold was being disassembled; construction company's failure to warn was a negligent act but not a substantial cause of the harm suffered].)

The jury was instructed that Michaelson had the right to expect that Toste would use reasonable care (CACI 411), and that it could consider the circumstances of the construction activity in determining the level of care to be exercised by Michaelson and Toste (CACI 710). It was a busy job site and Toste rushed the truck drivers. As the project general contractor, Toste violated his own safety rule that workers: " 'Be aware of common operator blind spots. Stay alert to the location of equipment. Avoid entering or standing in blind spots. Never stand behind a backing vehicle.' "

The jury reasonably could have found that Toste was inattentive due to on-going health problems. Toste had a chronic lung condition (pulmonary fibrosis) and suffered from hypoxia (low blood oxygen) that caused shortness of breath, dizziness, disorientation, fainting spells, leg fatigue, and proximal muscle weakness. Toste's doctor, Laura Lubarsky, testified that Toste was disabled and awaiting a lung transplant. Toste's health was poor and he rarely worked on job sites. Billy Tatum Jr., Toste's paving foreman for 37 years, testified that Toste was last seen on a paving job a month before the accident.

Appellant argues that Toste's health, the way he "ran" the job site, and Michaelson's lack of drug impairment are not relevant. If Michaelson violated the federal safety regulation by using marijuana, it matters not whether he drove safely. Appellant argues that "the mere fact that he drove at all is what matters" and that causation exists as a matter of law. Our courts, however, "have long since abandoned the liability-without-causation theory" that appellant proposes. (*DeArmond v. Southern Pacific Co.* (1967) 253 Cal.App.2d 648, 656 [failure to comply with whistle-sounding railroad statute].) There is no liability without causation. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 626, fn. 17.)

The jury reasonably could have concluded that the traffic fatality was caused by Toste's inattentiveness and careless conduct, rather than Michaelson's

7

marijuana use. When reasonable minds can differ as to the inferences to be drawn from the evidence, causation must be decided by the jury as an issue of fact. (*Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 207.) " 'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact. . . .' . . . [Citation.]" (*Jonkey v. Carignan Construction Co., supra*, 139 Cal.App.4th at p. 24.) Appellant makes no showing that the verdict is unsupported by the evidence or that the trial court abused its discretion in denying the motion for new trial.

As Witkin has observed: "If the accident would have happened anyway, whether defendant was negligent or not, then his or her negligence was not a cause in fact, and of course cannot be the legal or responsible cause." (10 Witkin Summary of California Law (2005) Torts section 1185, p. 1184.) This was the jury's implied finding. That is to say, this accident would have happened whether or not defendant driver was under the influence of marijuana. Decedent was run over because he was just not paying attention to the hazards of the job site.

As we said in *Jonkey v. Carignan Construction Co., supra*, 139 Cal.App.4th 20, 22: "A construction site can be a dangerous place. There are some people who are keenly aware of this danger-construction workers. Seasoned and mature construction workers who have risen to the top of this industry and who are supervisors, managers, and owners are not only keenly aware of the dangers; they also teach and are responsible for construction safety. . . . Of all people at a construction site, appellant was and is chargeable with caring for his own safety." He simply did not do so and, unfortunately, he died as a result of his standing in the blind spot of a backing asphalt truck.

*Interplay of Federal and State Law*

Appellant asserts that Michaelson's violation of the federal safety regulation establishes causation as a matter of law, i.e., that causation automatically flows from the

8

negligence finding.  A similar argument was made at trial based on the theory that the federal safety regulation is a "zero tolerance" standard.  Appellant argued:  "You can't drive, period, if you use [marijuana].  You don't have to show impairment. . . .  You can't use the drug, period, and drive a commercial motor vehicle.  That's the law."  Defense counsel argued that "you've got to show causation, and I think [Vehicle Code section] 23152 is the issue, and the issue[] that the jury has to decide.  Did [Michaelson] use marijuana and was he impaired at the time, because it all goes to negligence."

The trial court, over appellant's objection, instructed that state law prohibits a person from driving a vehicle while under the influence of any drug.  (Veh. Code, § 23152.)  There was no instructional error.  "It is hornbook law that each party to a lawsuit is entitled to have the jury instructed on all of his theories of the case that are supported by the pleadings and the evidence."  (*Phillips v. G.L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806.)  A trial court should not require a litigant to rely "on abstract generalities in presenting its legal theory of the case to the jury, but should instruct the jury on vital issues in terms that relate to the particular case before it.  [Citations.]"  (*Self v. General Motors Corp.* (1974) 42 Cal.App.3d 1, 10.)

Appellant complains that the instruction on state law rendered the federal safety regulation irrelevant.  The negligence per se instruction, however, set forth the federal safety regulation and Vehicle Code section 23152 in the alternative.  The jury was instructed that it must decide whether Michaelson "violated one or more of these laws or regulations . . . ."  (CACI 420.)  It was instructed that if Michaelson violated the federal safety regulation, appellant had to show it was a substantial factor in causing the harm suffered.  CACI 420 is a correct statement of the law.  "[I]n negligence per se actions, the plaintiff must produce evidence of a violation of a statute and a substantial probability that the plaintiff's injury was caused by the violation of the statute before the burden of proof shifts to the defendant to prove the violation of the statute did not cause the plaintiff's injury.  [Citation.]"  (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1347.)

9

Appellant argues that the instruction on negligence per se was confusing because it suggested that appellant had to prove that Michaelson was driving while "under the influence" of marijuana. The jury did not request a rereading of the instruction, ask clarifying questions, nor did counsel's argument to the jury misconstrue the instruction. (See *LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876.) Although Michaelson admitted using marijuana two days before the accident, the jury factually found that it was not a substantial factor in causing the accident. " 'A verdict should be interpreted so as to uphold it and to give it the effect intended by the jury, as well as one consistent with the law and the evidence.' [Citation.]" (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1223.) Appellant makes no showing that, but for the Vehicle Code section 23152 instruction, he would have obtained a more favorable verdict. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570.)

*CalPortland - Vicarious Liability*

Appellant asserts that the vicarious liability of CalPortland was not decided by the jury. At trial, appellant claimed that Michaelson was a temporary employee of CalPortland and that CalPortland would "be on the hook" just like V&J Rock Transport if Michaelson was negligent. The jury, by special verdict, found that Michaelson was not a temporary employee of CalPortland and that CalPortland was not negligent based on its own conduct. (Special Verdict, Questions 6 & 7.) It also found that Michaelson and V&J Rock Transport were not liable. "A judgment on the merits in favor of an employee bars recovery against the employer when the only claim against it is based on vicarious liability. . . . [Citation.]" (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1347.) There is no merit to the argument that CalPortland's liability was unresolved. As a carrier, CalPortland is not attempting to escape liability for the negligence of its independent contractors. (See e.g., *Serna v. Pettey Leach Trucking, Inc.* (2003) 110 Cal.App.4th 1475, 1486 [interstate motor carrier liable for harm caused by the negligence of its independent contractor].)

*Jury Misconduct*

Appellant moved for new trial based on the declarations of jurors Leslie Ann Martino and Diane Karen Barkas who opined that Breedlove's comments about CHP truck safety inspections was the key reason why the jury found that V&J Rock Transport was not negligent.[4] The trial court concluded that the declarations were inadmissible and purported to describe the jurors' thought processes during deliberations. (Evid. Code, § 1150, subd. (a); *Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 349.)

Five jurors, including the jury foreperson, declared that Breedlove did not talk about his personal experience with CHP truck safety inspections. The juror foreperson, Larry Hamilton, "strongly disagree[d]" with Martino's declaration and "did not recall any juror discussing his/her personal experience with truck inspections conducted by the California Highway Patrol or the details of such inspections during the deliberation process." The trial court concluded that the juror affidavits were "flatly contradictory" and that there was no juror misconduct based on the record presented. Simply put, the motion for new trial was a battle of the declarations. (See e.g., *Barboni v. Tuomi, supra*, 210 Cal.App.4th at p. 351.) "[I]t is the trial court that must assess the credibility of affiants or declarants, and the trial court is entitled to believe one over the other. [Citations.]" (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160.) Appellant makes no showing that the trial court abused its discretion in discrediting the

---

[4] Juror Barkas stated that "it appeared to me that [Breedlove's] personal opinion was based upon his personal experience and may have influenced the other juror's decision regarding V&J Rock Transport to vote for no negligence on the part of V&J Rock Transport." A verdict may not be impeached by inquiry into the juror's mental or subjective reasoning processes. (*People v. Steele* (2002) 27 Cal.4th 1230, 1261.) Appellant argues that a second juror, Matthew Vogler, professed to have specialized knowledge and experience in the trucking business. That is not supported by the juror declarations. According to Juror Martino, Vogler merely agreed with Breedlove's comments and analysis.

11

declarations of Martino and Barkas.[5] (See e.g., *Moore v. Preventive Medicine Medical Group, Inc.* (1986) 178 Cal.App.3d 728, 743.)

Where the motion for new trial is based on juror misconduct, the appellate court defers to the trial court's factual findings and independently assesses prejudice. (*Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 912; *Akers v. Kelly Co.* (1985) 173 Cal.App.3d 633, 657.) Juror Breedlove's alleged comments about CHP truck safety inspections applied only to V&J Rock Transport, i.e., whether the V&J Rock Transport truck driven by Michaelson had an inaudible backup alarm. The jury, by special verdict, found that V&J Rock Transport was not negligent (Special Verdict Question #4). Appellant speculates that it was a close vote but the jury was not polled on the issue. The evidence showed that the backup alarm was operating properly. No one complained that it was not loud enough and there is no evidence that V&J Rock Transport was cited for using an inaudible backup alarm. We are satisfied that appellant received a fair trial and there was no juror misconduct.

*Expert Witness Fees*

Respondents were awarded expert witness fees as a cost item based on appellant's failure to accept the pretrial offers of compromise. (§ 998, subd. (c)(1).) Appellant claims that the offers to compromise are conditional and do not track the language of section 998.

We reject the argument that CalPortland's $15,000 offer to compromise and Michaelson's and V&J Rock Transport's second offer to compromise for $750,001 failed to comply with section 998. Michaelson's and V&J Rock Transport's first offer to

---

[5] Appellant's reliance on *Whitlock v. Foster Wheeler, LLC, supra,* 160 Cal.App.4th 149 and *McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256 is misplaced. In those cases, the juror affidavits were uncontradicted and no one challenged the admissibility of the affidavits.

12

compromise (served July 31, 2013), however is conditional and invalid.[6] (See *Hutchins v. Waters* (1975) 51 Cal.App.3d 69, 73 [section 998 offer must be unconditional].)

Appellant complains that Michaelson's and V&J Rock Transport's offer to compromise does not provide for entry of judgment upon acceptance. The settlement offer provides for the payment of money ($750,001) in exchange for dismissal of the action. It is the legal equivalent of a judgment in appellant's favor. (*Goodstein v Bank of San Pedro* (1994) 27 Cal.App.4th 899, 907.) "An otherwise clear section 998 offer is not rendered invalid simply because it does not track precisely the language of the statute." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 728.) A defendant may condition the offer on the plaintiff's dismissal and a general release. (*Goodstein v. Bank of San Pedro, supra*, 27 Cal.App.4th at p. 907; *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1054-1056.)

Although the initial offer to compromise ($200,001) was conditioned on the approval of a good faith settlement motion, the second offer to compromise for $750,001 contained no contingencies. It required that appellant release and discharge Michaelson, V&J Rock Transport, and their insurance carriers from all claims set forth in the complaint. The offer was valid and comported with Code of Civil Procedure section 998. Unlike *Valentino v. Elliot Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, the offer to compromise was not ambiguous, incapable of valuation, or require a release of an

---

[6] Appellant's challenge to the conditional nature of the offer to compromise presents a question of law that this court considers de novo, first instance. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 797; *Valentino v. Elliot Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 694 [validity of settlement offer is issue of statutory interpretation].) The initial offer to compromise ($200,001) was contingent upon the approval of a good faith settlement motion and required that appellant defend, indemnify and hold Michaelson and V&J Rock Transport harmless against all third parties claims. The requirement that appellant indemnify and hold respondents harmless against third party claims "render[s] it difficult to accurately value the monetary term of the offer . . ." (*Id.*, at p. 698; see also *McKenzie v. Ford Motor Company* (2015) 238 Cal.App.4th 695, 706 [invalid section 998 offer conditioned upon release of all known and unknown claims and release of claims that had not yet accrued].)

insurance bad faith claim.  (See e.g., *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 271.)  "The release portion of the section 998 offer in *Valentino*, unlike the offer here, expressly included causes of action that were outside the scope of the litigation." (*Ibid.*)

Appellant's objection to CalPortland's offer to compromise is without merit. The offer to compromise provides for the payment of $15,000 in exchange for dismissal of the complaint and a full release "as to CALPORTLAND and all related entities and individuals.  Pursuant to said release, [appellant] will be responsible for all medical expenses/liens."  The offer to compromise comports with section 998 and offers to settle all claims against CalPortand, its employees, and its parent company.  The provision that appellant is responsible for medical expenses/liens is nothing more than a reminder of appellant's obligation to pay the medical expenses and liens.

The policy behind section 998 is to encourage the settlement of lawsuits prior to trial.  (*Martinez v. Brownco Construction Co., Inc.* (2013) 56 Cal.4th 1014, 1019.)  "[N]o ' "magic language" ' or specific format is required for either an offer or acceptance under section 998.  [Citations.]"  (*Rouland v. Pacific Specialty Insurance Company* (2013) 220 Cal.App.4th 280, 288.)  Appellant has failed to show that the offers to compromise were unreasonable or that the trial court abused its discretion in awarding costs under section 998.  (*Bates v. Presbyterian Intercommunity Hosp., Inc.* (2012) 204 Cal.App.4th 210, 221.)

*2016 Amendment to Code of Civil Procedure section 998*

Appellant argues that the recent amendment of Code of Civil Procedure section 998 precludes an award of preoffer expert witness fees.[7]  (Stats. 2015, ch. 345 (A.B. 1141), § 2, eff. Jan. 1, 2016.)  Section 998, subdivision (c)(1) now provides in pertinent part:  "If an offer made by a defendant is not accepted and the plaintiff fails to

---

[7]Because respondents obtained a defense verdict, they are entitled to recover all non-expert costs regardless of whether the costs were incurred preoffer or postoffer.  (See Code Civ. Proc., §§ 1032, 1033.5.)

14

obtain a more favorable judgment or award, the plaintiff shall not receive his or her postoffer costs and shall pay the defendant's costs from the time of the offer.  In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover *postoffer* costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."  (Italics added.)

Before the 2015 amendment, section 998 vested the trial court with the discretion to award expert witness fees as a cost item where the fees are incurred before and after the section 998 offer to compromise is served on and rejected by the plaintiff. (See Wegner et al., Cal. Practice Guide. Civil Trials and Evidence (The Rutter Group 2015) § 17:121, p. 17-58.; *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 1000; *Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 533, fn. 13 [discussing how section 998 treats defendants more favorably than plaintiffs].)  It was a legislative oversight because plaintiffs could only be awarded *postoffer* expert witness fees when the defendant rejected the plaintiff's settlement offer and failed to receive a more favorable judgment or award at trial.

A.B. 1141, which became effective January 1, 2016, equalizes the costs for plaintiffs and defendants in 998 settlement situations.  The Legislative Counsel's Digest comment to A.B. 1141 states:  "This bill would clarify that this provision requires a plaintiff to cover only expert witness costs that arose postoffer."  (6 West's, Cal. Legislative Service 2015, ch. 345, p. 3281.)

We hold that the section 998 amendment, as amended, applies to cases pending on appeal. (*American Airlines, Inc. v. Sheppard, Mulin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1056-1057 [most recent version of Code of Civil Procedure section 998, amended during appeal, governs award of expert fees]; *Heritage Engineering Const., Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439 [applying

15

then current version of Code of Civil Procedure section 998 to case pending on appeal when the 1997 amendment took effect].)

CalPortland correctly argues that the statutory amendment does not affect its award for costs. CalPortland served the offer to compromise on November 25, 2013. CalPortland's expert witness fees were incurred December 2013 through February 2014. Appellant makes no showing that CalPortland was awarded preoffer expert witness fees. Based on the foregoing, the judgment awarding CalPortland $25,341.44 costs, which includes $17,034.20 expert witness fees, is affirmed.

We reverse the cost award with respect to Michaelson and V&J Rock Transport. As discussed, Michaelson and V&J Rock Transport served two offers to compromise. The first offer to compromise, served July 31, 2013, is conditional and invalid. The second offer to compromise, served January 17, 2014, complies with section 998 and vested the trial court with the discretion to award postoffer expert witness fees. Michaelson and V&J Rock Transport concede that $2,350 expert witness' fees were incurred before the first July 31, 2013 offer to compromise was made. The amount of expert witness fees incurred from July 31, 2013 to January 17, 2014, the date the second offer to compromise was served, is unknown. We accordingly reverse the cost award to Michaelson & V&J Rock Transport and remand for reconsideration in light of newly amended section 998.

*Conclusion*

Appellant's remaining arguments have been considered and merit no further discussion. The judgment is affirmed as to CalPortland in its entirety. CalPortand is awarded costs on appeal.

With respect to Michaelson and V&J Rock Transport, the cost award is reversed and remanded for recalculation pursuant to section 998, subdivision (c)(1), as amended. The remainder of the judgment is affirmed. Appellant and respondents,

16

Michaelson & V&J Rock Transport, shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

                                                YEGAN, J.

We concur:

        GILBERT, P. J.

        PERREN, J.

Timothy J. Staffel, Judge

Superior Court County of Santa Barbara

_____

Don A. Ernst, Terry Kilpatrick; Ernst Law Group, for Appellant.


Frank T. Sabaitis, David V. Moore; Sabaitis, Lunsford &Moore, for Calportland Construction and Calportland Company, Respondents.


Darren W. Epps, Kevin N. Green; Epps & Gilroy, for V&J Rock Transport, Inc., and Paul Michaelson, Respondents.